UNITED STATES

v.

Eric K. ZENOR, 523 84 0233 Private First Class (E–2) U. S. Marine Corps.

NCM 75 2203.

U. S. Navy Court of Military Review.

Sentence Adjudged 28 April 1975.

Decided 17 March 1976.

Appearances: CAPT Paul H. Duvall, USMCR, Appellate Defense Counsel; LTJG Patrick A. Fayle, JAGC, USN, Appellate Government Counsel.

## DECISION

MALLERY, Judge:

Appellant was convicted, contrary to his pleas, by general court-martial military judge sitting alone, of four specifications of possession, transfer, and sale of cocaine and two specifications of possession and sale of marijuana. He was sentenced to a bad conduct discharge, confinement at hard labor for four years, and forfeiture of all pay and allowances. The convening authority approved the sentence but commuted six months of the confinement at hard labor to reduction to pay grade E–1. He also suspended the confinement at hard labor in excess of two years.

Appellant now contends that the Government failed to prove beyond a reasonable

doubt his guilt of any of the specifications involving cocaine. He bases his contention on the argument that cocaine is not "habit-forming". He also points out that the military judge never took judicial notice of the alleged habit-forming qualities of cocaine. Additionally, appellant contends that since cocaine is not habit-forming, the military judge incorrectly determined that the maximum permissible sentence included confinement at hard labor for 25 years vice 15 years. Finally, he contends that the staff judge advocate incorrectly advised the convening authority that the maximum permissible sentence included confinement at hard labor for 25 years vice 15 years. Appellant's assignments of error are ingenious but fallacious.

Appellant may be correct in pointing out that cocaine is not addictive. Certainly, there is considerable evidence to that effect. However, we cannot accept appellant's argument that the term "habit-forming", as used in connection with drug laws, refers only to drugs which cause physical dependence. Nevertheless, appellant has effectively raised an issue which merits some discussion. There has been great progress made in the analysis and definition of drug problems, but there is still considerable confusion. Perhaps, without invading the province of the physiologist, pharmacologist, or physician, we can shed some light on the subject.

Since time immemorial man has experimented with a great variety of natural materials which act on his nervous system. He has used alcohol to lift his spirits, belladonna to placate his angry innards, opium to render tolerable his intolerable environment, and many substances to help him to bear pain. As the American sociologist Bernard Barker pointed out:

> Not only can nearly anything be called a "drug," but things so called turn out to have an enormous variety of psychological and social functions not only religious and therapeutic and "addictive," but political and aesthetic and ideological and aphrodisiac and so on. Indeed, this has been the case since the beginning of hu-

man society. It seems that always and everywhere drugs have been involved in just about every psychological and social function there is, just as they are involved in every physiological function.

It is certainly true that many drugs are extremely useful to man. It is probably equally true that most drugs can and will be abused by some men. For example, alcohol, nicotine, and caffeine are in general use throughout the world, but all can be abused. In the case of alcohol, it is undeniable that its abuse has caused more suffering worldwide than the abuse of any other drug. However, the use of alcohol as a beverage is lawful in most places. On the other hand, it is now being argued by some that the use of cannabis, at least in its marijuana form, is not harmful and not subject to abuse and, therefore, should be legalized.

We need not enter into any discussion regarding whether or not the use of cannabis should be legalized, the use of alcohol should be prohibited, or whether the use of any other drug should be legalized or prohibited. At least for the time being, the people, through their legislatures, have spoken. The salient fact is that the legislatures have, in the proper exercise of their police power, prohibited the use of many drugs. They have based these prohibitions on the belief that the detrimental effect of the use of such drugs outweighs any possible beneficial effect.

There can be no doubt that the Congress of the United States, when it enacted the Uniform Code of Military Justice, and the President of the United States, when he promulgated and prescribed the Manual for Courts-Martial, United States, 1969 (Revised Edition), intended that wrongful possession, use, transfer, sale, or introduction of cocaine should be unlawful and punishable by court-martial. Unfortunately, the Manual for Courts-Martial describes the kind of drug to be proscribed simply as any "habit forming narcotic drug". It does not define the phrase "habit forming" or the word "narcotic". Nevertheless, the Court of Military Appeals has affirmed convic-

tions involving cocaine. *United States v. Boyd*, 18 U.S.C.M.A. 581, 40 C.M.R. 293 (1969). By necessary inference, our judicial superiors must have concluded that cocaine is to be treated as a "habit forming narcotic drug". However, since the Court of Military Appeals has never precisely defined the phrase "habit forming narcotic drug", we feel we should do so now.

■ We hold that the phrase "habit forming" refers to any drug which is likely to produce drug dependence. We recognize that the term "drug dependence" also contains within it certain difficulties in use. However, it is the term recommended for use by the World Health Organization and it is certainly superior to either the word "addiction" or the word "habituation". Some of the problems and considerations connected with the use of all these terms are well expressed in the following excerpt from 5 Encyclopaedia Britannica, *Drug Problems*, 1048 (15th ed. 1976):

> If opium were the only drug of abuse, and the only kind of abuse were one of habitual, compulsive use, discussion of addiction might be a simple matter. But opium is not the only drug of abuse, and there are probably as many kinds of abuse as there are drugs to abuse, or, indeed, as maybe there are persons who abuse.
>
> The tradition of equating drug abuse with narcotic addiction originally had some basis in fact. Until recent times, questions of addiction centered on the misuse of opiates, the various concoctions prepared from powdered opium. Then various alkaloids of opium, such as morphine and heroin, were isolated and introduced into use. Being the more active principles of opium, their addictions were simply more severe. More recently, new drugs such as methadone and demarol were synthesized but their effects were still sufficiently similar to those of opium and its derivatives to be included in the older concept of addiction. With the introduction of various barbiturates in the form of sedatives and sleeping pills, the homogeneity of addictions began to break down. Then came various tranquillizers, stimulants, new and old hallucinogens, and the various combinations of each. At this point, the unitary consideration of addiction became untenable. Legal attempts at control often forced the inclusion of some nonaddicting drugs into old, established categories—such as the practice of calling marijuana a narcotic. Problems also arose in attempting to broaden addiction to include habituation and, finally, drug dependence. Unitary conceptions cannot embrace the diverse and heterogeneous drugs currently in use. Certain physiological effects are so closely associated with the heavy use of opium and its derivatives that they have come to be considered characteristic of addictions in general. Some understanding of these physiological effects is necessary in order to appreciate the difficulties that are encountered in trying to include all drugs under a unitary definition that takes as its model opium. Tolerance is a physiological phenomenon that requires the individual to use more and more of the drug in repeated efforts to achieve the same effect.
>
> Tolerance for a drug may be completely independent of the drug's ability to produce physical dependence. There is no wholly acceptable explanation for physical dependence. It is thought to be associated with central-nervous-system depressants, although the distinction between depressants and stimulants is not as clear as it was once thought to be. Physical dependence manifests itself by the signs and symptoms of abstinence when the drug is withdrawn. All levels of the central nervous system appear to be involved, but a classic feature of physical dependence is the "abstinence" or "withdrawal" syndrome.
>
> The traditional distinction between "addiction" and "habituation" centers on the ability of a drug to produce tolerance and physical dependence. The opiates clearly possess the potential to massively challenge the body's resources, and, if so challenged, the body will make the corresponding biochemical, physiological, and psychological readjustment to the stress.

Drugs such as caffeine, nicotine, bromide, the salicylates, cocaine, amphetamine and other stimulants, certain tranquillizers and sedatives are normally not taken in sufficient amounts to present the challenge. They typically but not necessarily induce a strong need or craving emotionally or psychologically without producing the physical dependence that is associated with "hard" addiction. . . . Morphine, heroin, other synthetic opiates, and to a lesser extent codeine, alcohol, and the barbiturates, all carry a high propensity for potential danger in that all are easily capable of presenting a bodily challenge. Consequently, they are judged to be addicting under continued use. The ultimate effect of a particular drug, in any event, depends as much or more on the setting, the expectation of the user, his personality, and the social forces that play upon him, as it does on the pharmacological properties of the drug itself. Enormous difficulties have been encountered in trying to apply these definitions of addiction and habituation because of the wide variations in the pattern of use. (The one common denominator in drug use is variability.) As a result, in 1964 the World Health Organization recommended a new standard that replaces both the term drug addiction and the term drug habituation with the term *drug dependence.* Drug dependence is defined as a state arising from the repeated administration of a drug on a periodic or continual basis. Its characteristics will vary with the agent involved, and this must be made clear by designating drug dependence as being of a particular type—that is, drug dependence of morphine type, of cannabis type, of barbiturate type, and so forth. Considerations of tolerance and physical dependence are not prominent in this new definition, although they are still conspicuously present. Instead, the emphasis tends to be shifted in the direction of the psychological or psychiatric makeup of the individual and the pattern of use of the individual and his subculture. Several considerations are involved here.

There is the concept of psychological reliance in terms of both a sense of well-being and a permanent or semipermanent pattern of behaviour. There is also the concept of gratification by chemical means that has been substituted for other means of gratification. In brief, the drug has been substituted for adaptive behaviour. Terms such as hunger, need, craving, emotional dependence, habituation or psychological dependence tend to connote a reliance on a drug as a substitute gratification in the place of adaptive behaviour.

■ The term "narcotic" is possibly misused in the Manual for Courts-Martial. As defined in Webster's New Collegiate Dictionary 562 (7th ed. 1970), narcotic means "a drug (as Opium) that in moderate doses dulls the senses, relieves pain, and induces profound sleep, but in excessive doses causes stupor, coma, or convulsions." Thus, the term, if strictly construed, would include only opiates, (opium, morphine, heroin, and related synthetics) and would not include hallucinogenic drugs (LSD, mescaline, psilocybin and psilocin), barbiturates, cocaine, or amphetamines. That construal of the term could not have been the intention of the Congress or the President. Clearly, many of the drugs which would be excluded from the most strict definition of "narcotic" are among the most dangerous in use. We hold that the term "narcotic" as used in the Manual for Courts-Martial is a much broader term, is roughly equivalent to "habit forming" and produces "drug dependence" as defined above.

Fortunately, there is an easy way to determine exactly which drugs are proscribed. That is the method used in Article 1151, United States Navy Regulations, 1973, which reads as follows:

1151. Responsibilities concerning Marijuana, Narcotics, and other Controlled substances.

1. All personnel shall endeavor to prevent and eliminate the unauthorized use of marijuana, narcotics, and other controlled substances within the naval service.

2. Except for authorized medicinal purposes, the introduction, possession, use, sale, or other transfer of marijuana, narcotic substances or other controlled substances on board any ship, craft, or aircraft of the Department of the Navy or within any naval station or other place under the jurisdiction of the Department of the Navy, or the possession, use, sale, or other transfer of marijuana, narcotic substances or other controlled substances by persons in the naval service, is prohibited.

3. The term "controlled substance" means: a drug or other substance included in Schedule I, II, III, IV, or V established by section 202 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (84 Stat. 1236), as updated and republished under the provisions of that Act.

 In summary, we hold that Article 134, 10 U.S.C. § 934, UCMJ, prohibits the unlawful possession, use, transfer, sale, or introduction of any drug or other substance listed or described in Schedule I, II, III, IV, or V, established by section 202 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C., Ch. 13) (1970), as updated and republished under the provisions of that Act. Cocaine is precisely described in subparagraph (a)(4) of Schedule II of that act and is thus proscribed.

Appellant also correctly points out that the military judge failed to take judicial notice of the fact that cocaine is a "habit forming narcotic drug" and that its use is proscribed by Article 134, UCMJ. While it might have been better had the military judge done so, his failure is in no way prejudicial to appellant. *United States v. Burnett,* 1 M.J. 912 (N.C.M.R. 1976). There was evidence that the substance appellant possessed, transferred, and sold was cocaine. As a matter of law, such actions in connection with cocaine are prohibited by Article 134, UCMJ, and are punishable by court-martial.

In view of our disposition of appellant's first assignment of error, there is no need to discuss his second and third assignments which would have had validity only if we had accepted his first assignment.

Accordingly, the findings and sentence, as approved and partially suspended below, are affirmed.

Senior Judge EVANS and Judge GREGORY concur.