UNITED STATES

v.

Sergeant Donald E. POINSETT, FR 245–78–6307, United States Air Force Hospital Aviano, United States Air Forces in Europe.

ACM 22179.

U. S. Air Force Court of Military Review.

17 May 1977.

698

Appellate Counsel for the Accused: Colonel Robert W. Norris and Lieutenant Colonel Larry G. Stephens.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain Gilbert J. Regan.

Before BUEHLER, HERMAN, and OR-SER, Appellate Military Judges.

## DECISION

ORSER, Judge:

The accused stands convicted, contrary to his pleas, of eight heroin offenses in violation of Article 134, Uniform Code of Military Justice. All charges rose out of two

1. The Government's proof established that on each of the two occasions, the accused brought the heroin involved onto the base and, with the permission of the buyers, injected himself with a sample while completing the transaction.

2. Concerning each incident, the military judge properly determined that the introduction and possession offenses merged with the sale for punishment purposes, and that the use offense was separately punishable. See *United States*

heroin sales to Government informants on 25 and 30 April 1976. As to each transaction, the accused was charged with introducing heroin onto a military installation, possession, sale and use of the drug.[1]

■ In his sentencing instructions, the military judge advised the court members that the maximum punishment included confinement at hard labor for eight years.[2] The sentence thereafter imposed and approved provides for a bad conduct discharge, confinement at hard labor for two years, forfeiture of $100.00 per month for a like period, and reduction to the grade of airman basic.

Appellate defense counsel have assigned two errors. In the first we consider counsel allege:

THE MILITARY JUDGE ERRED IN FAILING TO INSTRUCT THE COURT ON UNCHARGED MISCONDUCT.

We agree.

During the trial, the defense objected to testimony by two Government informants, Airmen Oxley and Beal, that on 21 April 1976, four days prior to the first of the two charged sales, the accused made an attempt to sell them a quantity of heroin. According to the informants, they "fronted" the accused 45,000 lira (the Italian equivalent of $53.00) at the latter's request that they finance the heroin acquisition. The accused, they said, subsequently informed them that their money had been "ripped off." It seems his supposed supplier took the cash but failed to deliver the heroin.

The informants (not to mention their Government sponsors) were understandably anxious to get their money back or, preferably, something for their investment. They thus asked the accused if he would try

*v. Irving*, 3 M.J. 6 (C.M.A.1977); *United States v. Smith*, 24 U.S.C.M.A. 79, 51 C.M.R. 252, 1 M.J. 260 (1976); *United States v. Towns*, 22 U.S.C.M.A. 600, 48 C.M.R. 224 (1974). He further ruled that the maximum confinement was limited to two years for each sale and use offense. See *United States v. Courtney*, 24 U.S.C.M.A. 280, 51 C.M.R. 796, 1 M.J. 438 (1976).

again. Thereafter, with additional money supplied by agents of the Air Force Office of Special Investigations (OSI), as well as personal funds from Beal, the accused succeeded in making the two heroin transactions for which he was tried.

During the transactions Oxley was equipped with a microphone concealed on his person and by this means the OSI electronically recorded pertinent details. Stipulated transcripts of the recordings (made for the limited purpose of appellate review)[3] indicated that during the negotiations the parties discussed the initial 45,000 lira investment. In one conversation Oxley asked the accused if they could apply the still outstanding investment toward the purchase price of the gram of heroin they wished to buy. The accused responded that could not be done since he did not have any money. He reassured the informants, however, that he would repay them at a later time.

█ The military judge overruled the defense objection and permitted the evidence concerning the initial attempted sale. During an Article 39(a), 10 U.S.C. § 839(a) session prior to findings, the judge offered to instruct the court members that the evidence of the unsuccessful heroin sale could be considered only for the limited purpose of "its tendency, if any, to prove a plan or design [by the accused] to sell heroin . . . and to prove knowledge on [his] part . . . that the substance he sold . . . was in fact a habit-forming narcotic drug." The military judge further offered to instruct the members to disregard any comment by the accused indicating prior use of drugs

they heard in the recorded conversations played in court.[4]

The defense counsel expressly requested that no limiting instructions be given concerning the foregoing indications of uncharged misconduct on the basis that to do so would unduly call attention to them. The military judge labeled the defense request an affirmative waiver and accordingly gave no instructions.

Before discussing the propriety of the judge's action, our independent scrutiny of the record of trial reveals still another indication of uncharged misconduct. In recounting the accused's unsuccessful initial attempt to obtain heroin, Oxley testified the accused told him that he "usually" met with two Italians when he made heroin purchases, but on this particular occasion he had dealt with only one. The obvious import of such testimony, both to us and, we fear, the court members as well, is that the accused by his own admission had made a number of prior uncharged heroin purchases. This evidence and its import apparently went unnoticed by the trial litigants and the judge. The defense interposed no objection to that specific portion of Oxley's testimony. And, more significantly, the military judge neither instructed the court members to disregard the comment nor provided them with any kind of a limiting instruction.

█ As a general rule, evidence of uncharged misconduct of the accused is not admissible as tending to prove guilt, for ordinarily the evidence would be useful only for the purpose of raising an inference that the accused has a disposition to do acts of

3. Though the defense stipulated to the transcripts they did so with qualifications. They agreed only that the transcripts were accurate reproductions of the intelligible portions of the recordings. They did not stipulate that the authors of the specific words spoken were as indicated in the transcripts. The defense did agree, however, that if the informants were called as witnesses they would testify that the transcripts correctly identified each speaker.

4. The judge also offered to provide the members a limiting instruction concerning hypodermic syringes the accused gave the informants

in the 25 April transaction. On defense request, however, no instruction was given. Though appellate defense counsel have included this matter in their averment of error, we do not find this evidence to be indicative of uncharged misconduct. As argued by appellate government counsel, the possession of narcotic paraphernalia is not *per se* an offense in military law. *United States v. Caballero*, 23 U.S.C. M.A. 304, 49 C.M.R. 594 (1975). Moreover, nothing in the evidence reasonably indicates the accused obtained the syringes in a larcenous or otherwise improper manner.

the kind charged or criminal acts in general. Manual for Courts-Martial, 1969 (Rev.), paragraph 138*g*. However, as an exception to the rule, such evidence is admissible if it has substantial probative value as tending to prove something other than a fact to be inferred from the accused's disposition to commit criminal acts of the kind charged or criminal acts in general, or if offered in proper rebuttal of matters raised by the defense. Ibid.; *United States v. Carrier*, 50 C.M.R. 135, 140 (A.F.C.M.R.1975).

■ We have carefully considered the hitherto unnoticed indication of prior heroin purchases by the accused contained in the testimony of Oxley, and must conclude that such evidence was not admissible under any of the enumerated exceptions to the general rule of exclusion contained in paragraph 138*g* of the Manual. This evidence had no legitimate probative value respecting the charged offenses and the military judge erred in failing to exclude it from the court-martial's consideration.

■ Having carefully considered the evidence of the initial attempted sale, we are satisfied that it was admissible under the "plan or design" exception to the general exclusionary rule contained in the cited paragraph of the Manual for Courts-Martial.[5] Under this exception, when evidence of misconduct not charged tends to establish the existence of a common scheme or plan embracing both the charged and the uncharged offenses in an interwoven pattern (even though not inseparably so), such evidence is admissible for that limited purpose. *United States v. Luzzi*, 18 U.S.C.M.A. 221, 39 C.M.R. 221 (1969); *United States v. Pavoni*, 5 U.S.C.M.A. 591, 18 C.M.R. 215 (1955); *United States v. Haimson*, 5 U.S.C. M.A. 208, 17 C.M.R. 208 (1954). Of course, as this Court emphasized in an earlier decision, in the application of this rule something more than a generic similarity be-

tween offenses is necessary to render the uncharged misconduct admissible. *United States v. Mueller*, 42 C.M.R. 986, 990 (A.F.C. M.R.1970). It must be demonstrated that the uncharged misconduct bears some logical relevance to and is so clearly connected with the charged offenses as to be considered "individual steps in a plan or system of illicit activity." *United States v. Haimson* and *United States v. Mueller*, both supra. It follows that the time, place, and circumstances of the uncharged offenses are crucially significant factors in determining the relevance to the charged offenses. *United States v. Mueller* and *United States v. Pavoni*, both supra.

In the case before us, the Government demonstrated a close time, place, circumstance nexus between the uncharged attempted sale and the charged sales that followed. The attempted sale was but a few days before the initial successful one, occurred at the same place, and portrayed a common course of conduct which embraced both charged offenses. The accused's grand plan was to procure and sell heroin to the Government informants. His initial effort to do so was clearly logically relevant to the charged sales that followed, especially in light of the loss to the Government of the initially invested funds and the continuing efforts by its agents to recoup or offset them.

■ In spite of our finding of admissibility, however, we must further conclude that the military judge erred when he acquiesced to the defense request that no limiting instruction be given to the court-martial. *United States v. Grunden*, 25 U.S. C.M.A. 327, 54 C.M.R. 1053, 2 M.J. 116 (1977). When a court-martial considers evidence of offenses not charged for a limited legitimate purpose, the court members must be instructed *sua sponte* of such limitation. Manual for Courts-Martial, supra. As the United States Court of Military Appeals

---

5. The evidence was not, however, admissible to prove "knowledge" on the accused's part that the substance was heroin. Here, as in *United States v. Carrier*, supra, the defense presented no evidence on the merits and limited its trial strategy to an effort to impeach the two princi-

pal Government witnesses. No affirmative defenses were raised, nor were there any other issues of substance concerning the charges. Thus, the accused's "knowledge" that the substance he sold on two separate occasions was heroin was in no manner in issue.

declared in *Grunden* (2 M.J. at page 119): "When evidence of uncharged misconduct is permitted, nothing short of an instruction will suffice."

Appellate government counsel, in an effort to avoid the *Grunden* pronouncement, posit that the evidence regarding the attempted sale was admissible on grounds independent of the "plan or design" exception, with no consequent need for limiting instructions. They urge that such evidence, along with the evidence of prior drug use by the accused heard on the tapes, was part and parcel of the substantive proof of the charged offenses; that it was so intertwined and connected with the substantive offenses charged that no limiting instructions were necessary. *United States v. Cart*, 36 C.M.R. 858 (A.F.B.R.1966), *pet. denied*, 36 C.M.R. 541 (1966); *United States v. Daniels*, 37 C.M.R. 878 (A.F.B.R.1967), *pet. denied*, 37 C.M.R. 471 (1967).

 We concur with the Government position only with respect to the taped indication of the accused's prior drug use. In our judgment, the evidence concerning the initial attempted sale was not admissible on any basis apart from the "plan or design" exception, as to which a limiting instruction was necessary. And, of course, the indicated prior heroin purchases by the accused, which is not countenanced in the Government argument, was not admissible for any limited purpose. We are not persuaded that the latter two instances of uncharged misconduct were so intertwined with and inseparable from the charges as to be impossible to avoid while still maintaining an acceptable degree of coherency in the presentation of the essential proof. *United States v. Tobin*, 17 U.S.C.M.A. 625, 38 C.M.R. 423 (1968); *United States v. Daniels* and *United States v. Cart*, both supra; *United States v. Hopkins,* 33 C.M.R. 928 (A.F.B.R.1963), *pet. denied*, 33 C.M.R. 436 (1963). Although, for the reasons stated, the court-martial erroneously considered

the evidence of uncharged misconduct, reversal does not follow absent prejudicial harm to the accused. *United States v. Gaiter*, 23 U.S.C.M.A. 438, 50 C.M.R. 397, 1 M.J. 54 (C.M.A.1975); *United States v. Vogel*, 18 U.S.C.M.A. 160, 39 C.M.R. 160 (1969); *United States v. Carrier*, supra; see *United States v. Bryant*, 3 M.J. 9 (C.M.A.1977).

 Respecting the findings, in our view the competent evidence, including the incriminating and corroborative taped conversations between the accused and the informants, compellingly establishes the accused's guilt. It must be conceded that the erroneously considered uncharged misconduct evidence had a tendency to portray the accused as an individual with a criminal inclination or disposition. Significantly, however, such evidence was provided by Oxley and Beal, the same witnesses upon whose competent testimony the accused's guilt hinged. Thus, their recitation of misconduct not charged was merely cumulative of their testimony which related directly to the crimes in issue. Under the circumstances, the uncharged misconduct testimony added nothing to the witnesses' overall credibility. More to the point, the witnesses' testimony concerning uncharged misconduct was presumably given no greater credence by the court members than their testimony which bore directly on the charged offenses. We accordingly conclude there is no fair risk that the court's resolution of the issues adversely to the accused was influenced by the evidence of uncharged misconduct.[6] *United States v. Satey*, 16 U.S.C.M.A. 100, 36 C.M.R. 256 (1966); *United States v. Bryant, United States v. Vogel, United States v. Carrier*, all supra.

 Concerning the sentence, however, curative action is necessary. Evidence of uncharged misconduct may not be considered by the court for sentencing purposes unless it was properly introduced before findings or properly admitted during the sentencing proceedings. Manual for

---

**6.** This conclusion might be different had the uncharged misconduct evidence been provided by witnesses other than Oxley and Beal, particularly witnesses with unquestioned credibility credentials. Were that the situation, we might be constrained to conclude that the inference of a criminal disposition to do acts of the kind charged, created by such evidence, improperly sparked a corresponding inference that the accused committed the crimes charged.

Courts-Martial, supra, paragraphs 75 and 76 a (2); *United States v. Worley,* 19 U.S.C. M.A. 444, 42 C.M.R. 46 (1970). Here, it was proper for the court members to consider the indication of prior drug usage contained on the tape recordings, as well as the evidence concerning the initial attempted sale. The latter evidence was, after all, properly introduced, even though the military judge must be faulted for failing to provide a limiting instruction as to findings. Thus, the inadmissible reference to the accused's prior heroin sales was the only uncharged misconduct evidence improperly before the court members. Since the members were given no instruction to disregard it, they presumably considered such evidence during their sentence deliberations.

▮ Although we could direct a rehearing in order to cure the error, we believe the interests of justice can best be served by meaningful reassessment. *United States v. Kirby,* 16 U.S.C.M.A. 517, 37 C.M.R. 137 (1967); *United States v. Carrier, supra.* Having accordingly reassessed the sentence solely on the basis of the evidentiary matters that may be considered for punishment purposes, we find appropriate only so much thereof as provides for a bad conduct discharge, confinement at hard labor for 20 months, forfeiture of $100.00 per month for 20 months, and reduction to the grade of airman basic.

In their remaining assignment of error, appellate defense counsel allege the military judge erred in instructing the court

THAT A PERSON MUST HAVE INTENDED THE NATURAL AND PROBABLE CONSEQUENCES OF ANY ACT PURPOSELY DONE BY HIM.

We disagree.

▮ The cited language pertains to the military judge's instructional guidance to the court concerning the element of "purpose" embodied in the two offenses which alleged the accused introduced heroin onto a military installation "for the purpose of sale". The instruction advised the court members that circumstantial evidence could be utilized by them to establish the accused's intent in that regard.

We fully agree with appellate Government counsel that the instruction provided correct guidance to the court members. Considered as a whole, the instruction did not mandate a finding of intent simply on the basis that an act was done. Unlike the similar instruction condemned by the Court of Appeals for the 9th Circuit in *Cohen v. United States,* 378 F.2d 751 (9th Cir. 1967), *cert. denied,* 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967), there is no possibility the instruction in this case shifted the burden of proof to the accused or misled the members.

Here, the members were directed to consider all the circumstances in deciding what weight, if any, to give the inference of intent. Moreover, the military judge emphasized the Government's burden of proof and nothing in the instruction can be construed to even suggest a shifting of that burden.[7] Finally, the instruction clearly informed the court that the matter involved the actual intent of the accused, not whether a reasonable man in similar circumstances would have possessed the requisite intent.

For the reasons stated, the findings of guilty, and the sentence as herein modified, are

AFFIRMED.

BUEHLER, Senior Judge, and HERMAN, Judge, concur.

---

7. In that connection, in the cases cited by the defense the concern for the shifting of the burden was largely based on instructional language which included the phrase "unless the contrary appears." See *Cohen v. United States,* 378 F.2d 751 (9th Cir. 1967), *cert. de-* nied, 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967); *United States v. Robinson,* 545 F.2d 301 (2 Cir., 1976). As aptly noted by appellate Government counsel, the instruction given by the military judge in this case contains no such language.