**UNITED STATES**

v.

**Airman First Class Michael A. KING, FR 571–11–0766 United States Air Force.**

**ACM 22412.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 27 July 1978.

Decided 1 Feb. 1979.

928

Appellate Counsel for the Accused: Colonel B. Ellis Phillips and Captain Robert P. Hailey.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain Robert T. Mounts.

Before EARLY, HERMAN, ORSER and ARROWOOD, Appellate Military Judges.

## DECISION

ORSER, Judge:

Tried by a military judge sitting alone as a general court-martial, the accused was convicted, consonant with his pleas, of four specifications of transferring marihuana, one specification of transferring cocaine, one specification of using marihuana [1] and one specification of transferring tablets containing amphetamine.[2] The approved sentence is a bad conduct discharge, confinement at hard labor for twelve months, forfeiture of $260.00 per month for twelve months and reduction to airman basic.

In the first assertion of error we consider, appellate defense counsel contend the court-martial lacked jurisdiction over two of the seven drug offenses, transfers of marihuana and cocaine (Specifications 1 and 4 of

---

1. All in violation of Article 134 of the Uniform Code of Military Justice, 10 U.S.C. § 934.

2. In violation of Article 92, Code, 10 U.S.C. § 892, supra.

Charge I), as they occurred off-base. We disagree.

The challenged marihuana transfer was the first of the series of seven drug offenses charged against the accused. The challenged cocaine transfer was the fourth. The remaining unchallenged offenses all occurred on the military installation. The offenses occurred over an approximate two month period of time, specifically, from 8 February 1978 to 17 April 1978, and, except for the marihuana use offense and the third charged marihuana transfer, all involved the same transferee, an Airman Thacker. Thacker, a co-worker of the accused on the base flight line, became an undercover informant for the Office of Special Investigations a short time before the initial offense occurred.

Concerning that offense, the record shows the accused transferred a quantity of marihuana to Thacker on 8 February 1978. Although the marihuana was delivered by the accused to Thacker off-base, the record is clear that the arrangements for the transfer occurred on the installation. Thacker testified that on 6 February 1978, while he and the accused were on base performing their military duties, the accused offered to sell him marihuana at a reduced price if he agreed to encourage other airmen to buy or use the drug. Thereafter, either on the flight line, by telephone or in the barracks on-base, the accused made a specific offer to sell Thacker marihuana for $40.00 an ounce. During the discussion the accused mentioned that if Thacker could interest three or four others to buy marihuana, he would reduce the price to Thacker to $35.00 an ounce. Thacker accepted the offer and pursuant to the bargain the accused transferred some 24 grams of marihuana to Thacker on 8 February 1978. Thacker paid the accused $40.00 for the drug. The actual transfer was made at Bellevue, Nebraska, near a trailer in which the accused resided. The trailer was located about 20 feet from the perimeter fence around Offutt Air Force Base, Nebraska, and about one-half mile from the nearest entrance to the installation.

With respect to the challenged cocaine transfer, which occurred on 10 April 1978, again the record shows the arrangements were made on the military base, at least from the transferee's perspective. Of pertinence, prior to that offense, on 1 March 1978, the accused transferred about 27.5 grams of marihuana to Thacker and an identical amount to an Airman Clute. And on that same date, the accused was observed smoking a marihuana cigarette. All of these offenses occurred in Thacker's barracks room on Offutt Air Force Base.

Thacker testified that on 9 April 1978, the accused telephoned him at his barracks and reported he could supply eight grams of cocaine for $90.00 a gram. Thacker told the accused he was interested in buying all eight grams, both for personal experimentation and to, perhaps, make some extra money "on the side" by resale. Subsequently, the accused, from an off-base telephone, called Thacker at the latter's barracks and arrangements were made for Thacker to buy two grams of cocaine with delivery to be made on-base.

As the time for the transaction neared, Thacker telephoned the accused. The accused informed him he was having car trouble and requested that Thacker transport him to his supplier to obtain the cocaine. Thacker agreed to chauffeur the accused and soon thereafter, accompanied by Clute, drove the accused to a residence in Omaha, Nebraska. The accused asked for and received $180.00 and entered the residence alone. About fifteen minutes later he returned and delivered the cocaine to Thacker.

■ Having analyzed the foregoing circumstances in terms of the criteria set forth in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), we are convinced both offenses were sufficiently service connected to warrant their inclusion at trial. See *United States v. Alef*, 3 M.J. 414 (C.M.A.1977). As observed, all "essential underlying negotiations" concerning both offenses occurred on the military installation. *Ibid*, nn. 6 and 12. Moreover,

the marihuana offense led to a succession of drug transactions that, except for the cocaine transfer, occurred entirely on the installation; it was truly the genesis of an integrated course of on-base illicit drug conduct.

Although the arrangements for the cocaine transfer were made by telephone while the accused was off-base, it is significant that the transferee was on-base at the time. As Judge Cook observed in his dissent in *United States v. Johnson,* 4 M.J. 92 (C.M.A.1977):

> In my opinion, communication of this kind by telephone is as consequential as communication in person, and like the latter, is sufficient to justify court-martial jurisdiction over the off-base offenses.

We find further military significance in the fact that the cocaine transfer was sandwiched between on-base drug offenses and, as such, was part of the integrated course of criminal conduct centered on the base. Of related import, we believe, is the fact that the cocaine transfer was initially planned to occur on the installation. Its actual off-base situs was occasioned by an entirely incidental circumstance, the accused's last minute car trouble.

In specific terms of the *Relford* criteria we are satisfied that the following factors establish that the military had an overriding, if not exclusive, interest in prosecuting the offenses:[3]

(1) The on-base formation of the criminal intent;

(2) The military duty status of the parties to the negotiations, at least as to the marihuana offense;

(3) The obvious threat posed to military personnel and thus the military community by the offenses.

All factors considered, the military community interest in prosecuting all offenses charged was paramount. The circumstances demonstrate a unique military concern that could not be adequately vindicated in the civilian courts. *Schlesinger v. Councilman,* 420 U.S. 738, 760, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975).

Turning to another issue, in addressing the accused concerning his written request for trial by judge alone, the military judge stated:

MJ: The mere fact that you have signed this request does not mean you cannot withdraw it. If you wish. [sic] However, once I have approved your request and announced that the court is assembled, you may not withdraw the request for trial before me alone. Do you understand that?

ACC: Yes sir.

■ Appellate defense counsel correctly argue that this advice was incorrect. In *United States v. Morris,* 23 U.S.C.M.A. 319, 49 C.M.R. 653 (1975), the United States Court of Military Appeals determined that the time for making a request for trial by military judge alone was a matter of procedure not jurisdiction. In *United States v. Bryant,* 23 U.S.C.M.A. 326, 49 C.M.R. 660 (1975), decided the same day as *Morris,* the Court declared that subsequent to assembly a military judge possessed the discretionary authority to permit an accused to revoke an election for trial by military judge alone. Thus, in the case at hand, the military judge should have advised the accused that if he desired to withdraw his request for judge alone after approval and assembly, he (the judge) possessed the discretion to permit it.[4]

■ Despite the fact the military judge's advice did not fully comport with the law, we are convinced the accused was not misled to his prejudice. As appellate government counsel aptly note, even if the mili-

3. *United States v. McCarthy,* 2 M.J. 26 (C.M.A. 1976).

4. This advice is contained in Interim Change 78–2 (Headquarters USAF/JAJ Letter, 1 June 1978) to Air Force Pamphlet 111–6, Procedure Guides for Courts-Martial (19 April 1976). The advice given by the military judge was essentially as recommended in Air Force Pamphlet 111–6, Chapter 2, p. 7, prior to the Interim Change.

tary judge and the accused's two qualified counsel were unaware of the true state of the law, the record is devoid of any changed circumstances which arguably would have prompted a post-assembly motion for withdrawal of the request for a bench trial. Correspondingly, and again given the state of the record, there is no likelihood that a denial of such motion by the military judge would have been condemned by appellate authorities as an abuse of discretion. See *United States v. Bryant*, supra, and *United States v. Wright*, 5 M.J. 106 (C.M.A.1978).[5]

Appellate defense counsel further allege that the accused's plea of guilty to the specification charging a wrongful transfer of cocaine, in violation of Article 134, Code, supra (Specification 4 of Charge I) was improvident, in that he refused to admit an essential element of the offense.

The specification in question reads as follows:

> In that AIRMAN FIRST CLASS MICHAEL A. KING, United States Air Force, 55 Organizational Maintenance Squadron, did, at Omaha, Nebraska, on or about 10 April 1978, wrongfully transfer 1.618 grams, more or less, of a habit forming narcotic drug, to wit: cocaine to Jeffrey L. Thacker.

The accused attempted to qualify his plea of guilty by excepting from the specification the words, "a habit forming narcotic drug, to wit." Following an exhaustive providency inquiry as required by *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969), the military judge accepted the proposed plea and, despite the excepted words, found the accused guilty as charged.

Appellate defense counsel now argue that the accused's qualified plea was patently inconsistent with his announced intention to plead guilty, since the gravamen of the offense is not the transfer of cocaine *per se*, but rather the transfer of "a habit forming narcotic drug."[6] On that basis, say counsel, the military judge was required to reject the proffered plea of guilty. See *United States v. Vance*, 17 U.S.C.M.A. 444, 38 C.M.R. 242 (1968).

█ Article 45 of the Uniform Code of Military Justice, 10 U.S.C. § 845 specifies that if an accused, after pleading guilty, presents matters inconsistent with such plea, or if it otherwise appears the plea is improvidently made, a plea of not guilty must be entered and the trial proceeds in that manner. This requirement is designed to insure that an accused's guilt is consistently acknowledged from time of plea to sentence announcement. *United States v. Woods*, 22 U.S.C.M.A. 137, 46 C.M.R. 137 (1973); *United States v. Fullen*, 1 M.J. 853 (A.F.C.M.R.1976). In that regard, slight inconsistencies not amounting to a negation or disavowal of any of the essential elements of the offense do not require rejection of the plea. It is only when the matters presented are truly inconsistent with factual guilt that a not guilty plea must be entered. *United States v. Timmons*, 21 U.S.C.M.A. 475, 45 C.M.R. 249 (1972); *United States v. Logan*, 22 U.S.C.M.A. 349, 47 C.M.R. 1 (1973); *United States v. Welker*, 8 U.S.C.M.A. 647, 25 C.M.R. 151 (1958).

With these principles to guide us, we find the accused's responses to the military judge's searching inquiry to be entirely consistent with guilt respecting each essential element of the cocaine offense, notwithstanding his failure to admit that cocaine was a habit forming narcotic drug, as alleged.

█ During the providency inquiry, the military judge took judicial notice of 21

---

5. *United States v. Wright*, 5 M.J. 106 (C.M.A. 1978), cited by appellate government counsel, demonstrates the kind of changed conditions that caused the Court of Military Appeals to hold the military judge's denial of a motion for withdrawal of a request for trial by military judge alone to be an abuse of discretion.

6. Although Article 134, Code, supra, does not specifically mention cocaine, paragraph 213*b*, Manual for Courts-Martial, United States, 1969 (Rev.), states that it is a violation of Article 134 ". . . wrongfully to possess or use marihuana or a habit forming narcotic drug." Elsewhere in the *Manual* it is stated that the maximum punishment for offenses involving habit forming narcotic drugs, including transfers thereof, extends to confinement at hard labor for 10 years. *Id.*, paragraph 127*c*.

U.S.C. § 812 (Schedule II) which classifies coca leaves and any salt, compound, derivative, or preparation of coca leaves, or chemical equivalents, as a drug the abuse of which may lead to severe psychological or physical dependence. Section 802 of that same Title of the United States Code classifies the foregoing substances as narcotic drugs for purposes of the Comprehensive Drug Abuse and Control Act of 1970, 21 U.S.C. § 801, et seq. Of related import, federal courts have held that cocaine is included as a Schedule II narcotic drug under the provision relating to any salt, compound, derivative or preparation of coca leaves. Such classification for penalty and regulatory purposes constitutes a valid exercise of Congressional power even though the drug may not pharmacologically be a narcotic, as Congressional classifications need not mirror medical classifications. United States v. Umentum, 401 F.Supp. 746 (E.D.Wis.1975), affirmed, 547 F.2d 987 (7th Cir. 1976), cert. denied, 430 U.S. 983, 97 S.Ct. 1677, 52 L.Ed.2d 376 (1977); United States v. Hobbs, 392 F.Supp. 444 (D.Mass. 1975); United States v. Amidzich, 396 F.Supp. 1140 (E.D.Wis.1975); United States v. Lindelow, 435 F.Supp. 367 (D.Puerto Rico 1977); United States v. Castro, 401 F.Supp. 120 (N.D.Ill.1975); see also the Court of Military Appeals decision of United States v. Turner, 18 U.S.C.M.A. 55, 39 C.M.R. 55 (1968). Pertinently, cocaine offenses charged under Article 134 have been upheld in several military cases. See, e. g., United States v. Fisher, 21 U.S.C.M.A. 223, 44 C.M.R. 277 (1972); United States v. Boyd, 18 U.S.C.M.A. 581, 40 C.M.R. 293 (1969); United States v. Thomas, 6 M.J. 573 (A.C.M. R.1978); United States v. Zenor, 1 M.J. 918 (N.C.M.R.1976), affirmed, 3 M.J. 186 (C.M. A.1977); United States v. Couisnard, 47 C.M.R. 765 (A.F.C.M.R.1973).

The significance of the foregoing recitation to the issue before us is that the status of cocaine as a habit forming narcotic drug is a question of law, not fact. United States v. Porter, 544 F.2d 936 (8th Cir. 1976). Thus, for purposes of the providency of the accused's plea, it is sufficient that he admitted, without reservation, the wrongful transfer of cocaine in the manner alleged. His failure to acknowledge that cocaine was a habit forming narcotic drug amounts to no more than a claim of ignorance of law; a claim that constitutes no excuse for the criminal act charged. See United States v. Greenwood, 6 U.S.C.M.A. 209, 19 C.M.R. 335, 340 (1955); Manual for Courts-Martial, supra, paragraph 154a (5). We, therefore, agree with appellate government counsel that the excepted language was not essential to the specification and, in fact, was inherently included in the word "cocaine" in the context of the specification.[7] Accordingly, the accused's guilty plea to the cocaine offense was provident and properly accepted by the military judge. Moreover, the maximum confinement for the offense was correctly calculated to be ten years. United States v. Thomas, supra.

On the authority of United States v. Guilbault, 6 M.J. 20 (C.M.A.1978), we concur with appellate defense counsel that the maximum period of confinement for the Specification of Charge II, alleging a wrongful transfer of amphetamines, should have been one year rather than two years as determined by the military judge at trial. In that regard, such offenses are punishable in part by confinement for one year under § 33–702(a)(1) of the District of Columbia Code. This error, combined with another noted by the staff judge advocate

---

7. For an excellent analysis of the charging of cocaine offenses under Article 134, Code, supra, see Schlechter, Charging Cocaine in the Military, 5 AF JAG Rptr. 7 (August 1978). Major Schlechter persuasively argues that on the basis of cocaine's deleterious impact on military effectiveness, such offenses could properly be charged under Article 134, clause one or two, even without the allegation that the drug is a habit forming narcotic. He adds that the maximum period of confinement under such charging would remain ten years on the basis that in using the words "Drugs, habit forming," in the Table of Maximum Punishments, (Manual for Courts-Martial, supra, paragraph 127c ) the President intended to include cocaine in reliance upon the Congressional classification of the term, rather than technical pharmacological definition.

in his review,[8] resulted in a trial determination that the maximum period of confinement was 37 years, rather than the correct amount, 34 years.

 Notwithstanding such errors, on the basis of the relatively slight difference in total years confinement to which the accused was subject, we are convinced there was no "substantial misunderstanding" on the accused's part so as to render his guilty plea improvident. *United States v. Harden*, 1 M.J. 258 (C.M.A.1976); *United States v. Frangoules*, 1 M.J. 467 (C.M.A.1976); see *United States v. Martin*, 4 M.J. 852 (A.C.M.R.1978); *United States v. Nevills*, 1 M.J. 1077 (N.C.M.R.1977). On that same basis, and in further light of the fact that the punishment imposed on the accused by the military judge included only one year of confinement, we are also convinced the accused was not prejudiced as to sentence. See *United States v. Saulter*, 1 M.J. 1066 (N.C.M.R.1976).

For the reasons stated, the approved findings of guilty and the sentence are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

EARLY, Chief Judge, and HERMAN and ARROWOOD, Judges, concur.

---

8. In his review, the staff judge advocate correctly concluded that simultaneous transfers of marihuana and amphetamine tablets to the same individual were multiplicious and merged into a single offense for punishment purposes.

*United States v. Jones*, 4 M.J. 920 (A.F.C.M.R. 1978); *United States v. Gash*, 2 M.J. 707 (A.F. C.M.R.1976); see *United States v. Hughes*, 1 M.J. 346 (C.M.A.1976).