UNITED STATES

v.

**Airman First Class Kenneth M. BROWN,
FR 184–44–2089 United States
Air Force.**

ACM 22498.

U. S. Air Force Court of Military Review.

Sentence adjudged 6 Jan. 1979.

Decided 1 Aug. 1979.

Appellate Counsel for the Accused: Colonel B. Ellis Phillips, Lieutenant Colonel Larry G. Stephens and Captain Patrick A. Tucker.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., Lieutenant Colonel James P. Porter, Lieutenant Colonel Merton F. Filkins and Captain Robert T. Mounts.

Before EARLY, HERMAN and ARROWOOD, Appellate Military Judges.

## DECISION

ARROWOOD, Judge:

The accused was convicted by a general court-martial, consistent with his guilty plea, of four specifications of consensual sodomy, in violation of Article 125, Uniform Code of Military Justice, 10 U.S.C. § 925. The charge had specified one allegation of consensual sodomy and three allegations of forcible sodomy, but the accused maintained in his plea, and the court apparently agreed, that all the acts were consensual. The accused was acquitted of extorting sexual favors and committing indecent acts in violation of Articles 127 and 134, respectively, Code, 10 U.S.C. §§ 927, 934, supra. The approved sentence extends to a bad conduct discharge, confinement at hard labor for six months, forfeiture of $200 per month for six months and reduction to the grade of airman basic.[1]

In their second assignment of error, which we consider first, appellate defense counsel assert that the court-martial lacked subject matter jurisdiction over Specification 4 of Charge II. This specification alleged acts of forcible sodomy by the accused over a four month period in various civilian communities in Arizona, Illinois, Indiana, and Missouri.

Evidence at trial revealed that the accused and the victim, Airman Bailey, first met in the dormitory at Williams Air Force Base shortly after the victim's arrival. They were assigned to the same unit and developed a friendship through their associations on base. They also socialized on base when they were off duty. The accused first requested that Bailey perform a homosexual act while they were in the dormitory. In fact, the first homosexual contact between the two airmen took place in the dormitory. Thereafter, when Bailey became uneasy about their relationship, the accused threatened to expose him to his military superiors. While on duty, the accused frequently called him at his duty section. These telephone calls were made to threaten, harass and intimidate Bailey as well as to arrange homosexual liaisons on and off the base.

With respect to the acts covered by the specification which took place in states other than Arizona, the evidence showed that such acts occurred on a journey that the accused and Bailey took together. The trip began at Williams Air Force Base and proceeded to Luke Air Force Base. A homosexual act occurred between the two airmen at Luke Air Force Base. From Luke, the pair traveled to St. Louis, Missouri; Robinson, Illinois; and Terre Haute, Indiana; engaging in homosexual acts at each place.

After their return from the trip, they continued their homosexual relationship, often meeting both on and off base during the duty day to perform the acts.

Airman Bailey's supervisor testified that Bailey had been an excellent and conscientious worker, but around the time of the first charged act, "his whole attitude changed" so much that "it was like he wasn't even in the hangar." The supervisor said that Bailey would receive as many as three telephone calls a day from the accused and that the calls were "taking him away from his work." The supervisor also testified that approximately thirty man-hours were spent counseling him as a result of his slipping duty performance.

Weighing the factors bearing on military jurisdiction set forth in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), the military judge denied a defense motion to dismiss the specification for lack of jurisdiction. The judge found, as the Government had pleaded,[2] that the of-

---

1. The Motion to File Answer to Reply to Assignment of Errors is granted.

2. The Government pleaded the jurisdictional basis in accordance with *United States v. Alef*, 3 M.J. 414 (C.M.A.1977).

fenses were part of a continuing course of conduct which had its inception at Williams Air Force Base; that the general criminal intent required for the offenses was formed at Williams Air Force Base; that to the extent that threats and force were used, the offenses were committed in substantial part at Williams Air Force Base; that the offenses constituted a flouting of military authority; and that the offenses were ones traditionally prosecuted by the military. Further, the military judge found that the offenses had degraded the duty performance of the alleged victim and had an adverse impact upon the mission of the aircraft maintenance squadron to which the victim was assigned.

■ The essential considerations in weighing the *Relford* criteria include the impact of the offense on military discipline and effectiveness; whether the military interest in deterring the offense is greater than and distinct from the civilian interest; and whether the military interest can be adequately vindicated in the civilian courts. *Schlesinger v. Councilman*, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1974). The fact that both the accused and the victim are military members does not alone confer jurisdiction upon a court-martial. *United States v. Hedlund*, 2 M.J. 11 (C.M.A.1976).

■ Considering the facts in the light of *Relford*, supra, we find an "essential and obvious interest of the military." 401 U.S. at 367. The continuing course of homosexual conduct between the accused and the alleged victim was inextricably bound up with their duty performance and their intimate relationship grew directly from their military associations. See *United States v. Conn*, 6 M.J. 351 (C.M.A.1979) and *United States v. Ruggerio*, 1 M.J. 1089 (N.C.M.R. 1977), pet. den., 3 M.J. 117 (C.M.A.1977). Also the acts committed off base were "part of the integrated course of criminal conduct centered on the base." *United States v. King*, 6 M.J. 927, 930 (A.F.C.M.R. 1979).

In *United States v. Ruggerio*, supra, the Navy Court of Military Review found court-martial jurisdiction over off-base acts of sexual misconduct where the accused and the victim had been introduced on base and were acquainted through their subsequent encounters on base. The language of the Navy Court in that case is applicable here:

> Sexual or other assaults by one member of a military unit upon another member of the same unit, when both assailant and victim associate from day to day in their unit or elsewhere, on base, in the course of their working or other military relationships, pose a serious threat to good order and discipline within the unit, even though the assaults occur off base.

1 M.J. 1089, 1098; see also *United States v. Allen*, 3 M.J. 986 (A.C.M.R.1977).

The fact that the offenses in the present case degraded the duty performance of Bailey to the extent that "he didn't know what he was doing," and seriously eroded the mission of a vital tactical fighter maintenance squadron by consuming valuable work time to counsel him, demonstrates a substantial threat to the military community and creates a distinct military interest without parallel in the civilian community. Such a military interest cannot be adequately vindicated in the civilian courts. Considering all the surrounding circumstances, we find the specification was properly triable by court-martial.

Appellate defense counsel also contend that the testimony of a prosecution witness, Airman Johnson, improperly put before the court evidence of uncharged misconduct on the part of the accused.

Johnson testified that on three occasions in the year immediately preceding the acts charged, the accused had approached him with requests to "take his pants down" and let him "get close." Johnson understood these requests to mean that the accused wanted Johnson to perform a homosexual act. The accused, according to Johnson, said he needed to find out if he was a homosexual. Johnson also told the court that the accused requested that Johnson write letters expressing his feelings for the accused "as a brother." Johnson refused these requests. Finally, Johnson testified

that the accused had threatened to "burn" him; had engaged him in four physical fights; and had threatened his wife.

Earlier, the victim, Airman Bailey, had given testimony virtually identical in substance to that of Johnson. Bailey said that the accused had expressed a need to find out if he was a homosexual; that in order to find out, the accused wanted to take Bailey's pants down and "get close"; that the accused requested letters expressing Bailey's "love" for the accused "as a brother"; that the accused had engaged him in three physical fights, threatened to "burn" him, and threatened his wife.

Prior to Johnson's testimony the military judge instructed the court members that the testimony would be admitted only for a limited purpose.

 Evidence of uncharged misconduct is properly admitted, when, among other circumstances, it tends to identify the accused as the perpetrator of the offenses charged; or when it tends to show a plan or scheme of the accused. Paragraph 138g, Manual for Courts-Martial, United States, 1969 (Revised). More specifically, acts of uncharged sexual misconduct may be relevant to the motive and intent of the accused. *United States v. Woolery*, 5 M.J. 31 (C.M.A.1978).

The similarity of Johnson's testimony to that of Bailey and the strong nexus between the circumstances of the charged and the uncharged acts reasonably tend to prove the involvement of the accused in the charged acts. See *United States v. Janis*, 1 M.J. 395 (C.M.A.1976). Johnson's testimony also tended to show that the accused had a particular scheme for obtaining sexual favors and committing lewd acts with other persons. The testimony was thus relevant to the charges of extortion and committing lewd acts. There was nothing so inflammatory in Johnson's testimony that its probative value was diminished, especially considering that he did not testify to any completed homosexual act on the part of the accused. With the limiting instruction prior to the testimony and again before the court closed for delibera-

tions, it was not error to admit the testimony. Since this evidence was properly admitted, it could then be considered in sentencing. Paragraph 76a(2), Manual, supra. See also *United States v. Poinsett*, 3 M.J. 697 (A.F.C.M.R.1977), pet. denied, 3 M.J. 483 (C.M.A.1977).

We decline the invitation of appellate defense counsel to declare that private, consensual sexual activity may not be constitutionally punished under Article 125, Code, supra. The present state of the law was settled in *United States v. Scoby*, 5 M.J. 160 (C.M.A.1978), where the United States Court of Military Appeals found no constitutional protection for acts such as those of which the accused was convicted. We see no reason to disregard the settled law.

Finally, there is no merit to appellate defense counsel's assertion that the post trial review by the staff judge advocate was inadequate and misleading as it relates to the place of confinement. In reviewing all of the information made a part of the review and provided to the reviewing authority, we are satisfied that he was fully advised of his responsibilities, powers and options in this case.

The findings and sentence are correct in law and fact and are

AFFIRMED.

EARLY, Chief Judge, and HERMAN, Judge, concur.