**UNITED STATES, Appellee,**

v.

**James W. HUGHES, Jr., Specialist Four, U. S. Army, Appellant.**

**No. 30,121.**

U. S. Court of Military Appeals.

March 19, 1976.

*Colonel Victor A. DeFiori* and *Captain Ronald Lewis Gallant* were on the brief for Appellant, Accused.

*Captain Keith H. Jung* and *Captain Joel M. Martel* were on the brief for Appellee, United States.

OPINION OF THE COURT

FLETCHER, Chief Judge:

We granted the appellant's petition to reexamine whether simultaneous multiple drug possession offenses may be separately punished where all the charges allege a violation of the same lawful general regulation, specifically Army Regulation 600–50. In *United States v. Meyer,* 21 U.S.C.M.A. 310, 312, 45 C.M.R. 84, 86 (1972), a majority of this Court assumed, "without deciding, that separate acts of misconduct . . . [could] become so connected in place, circumstances, and time as to merge into a single offense. Cf. *United States v. Smith,* 17 U.S.C.M.A. 55, 62, 37 C.M.R. 319, 326 (1967)." Yet, the Court concluded that Specialist Meyer *could* be separately punished for simultaneously possessing different drugs found during a search of his quarters since the drugs were purchased at different times and "the substances themselves were never even placed in a single container. Cf. *United States v. Marine,* 17 U.S.C.M.A. 460, 38 C.M.R. 258 (1968)." 21 U.S.C.M.A. 312, 45 C.M.R. 86.

In a separate opinion in *Meyer,* it was suggested that such offenses always were separately punishable since each of the prohibited substances fell within a different schedule of the Comprehensive Drug Abuse Prevention and Control Act of 1970 [1] wherein "Congress . . . manifested an attitude not of lenity but of severity toward violations of that Act. . . . See *Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958)." *Id.*

Where an individual is subjected to multiple penalties for violating a single lawful general regulation or statute by simultaneously possessing different controlled substances, the Federal penalty scheme, even though relevant inasmuch as it provided the basis for the Army regulation, is not controlling since the offense charged involves a violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892, rather than the Controlled Substances Act, 21 U.S.C. § 844. *See* paragraph 127c, Manual for Courts-Martial,

1.  21 U.S.C. § 801.

United States, 1969 (Rev.). Reexamination of the Federal statute, however, suggests that the possession penalties described as severe [2] are in actuality, quite the contrary. For instance, under 21 U.S.C. § 844(a), the first conviction penalty for simple possession of a controlled substance is imprisonment for not more than 1 year and a fine of not more than $5,000. In addition, a first offender may be placed on probation before entry of judgment for no more than 1 year and, upon completion of the probationary period, he must be discharged without an adjudication of guilt. 21 U.S.C. § 844(b)(1).

■ Satisfied, as we are, that the Federal statute offers no more guidance on the multiplicity question than does the Uniform Code, we must once again formulate a policy to fill the legislative void. The judicial preference in such instances is "to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment." *Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955); *accord, Ladner v. United States*, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958); *United States v. Meyer, supra.*

■ With this in mind, we believe the appropriate inquiry in resolving the multiplicity question presented must focus on the time proximity between the possession offenses charged. Although this Court in *Meyer* looked to whether the drugs were secreted in the same location or container, no longer do we believe that such an analysis is relevant. The defendant's choice of storage containers or hiding places should not affect the maximum punishment for

possession of a cache of drugs. The gravamen of the offense is possessing illicit drugs not concealing them. Similarly irrelevant is a determination of the maximum penalty for multiple possession offenses by resort to the time and place of acquisition. *Compare United States v. Meyer, supra, with United States v. Martin*, 302 F.Supp. 498 (W.D.Pa. 1969). Again, the intent of the regulation is to penalize not unlawful purchase but rather unlawful possession. Thus, of controlling significance, is when the accused is charged with and proven to have been in actual possession.

■ The allegations and proof in the present case establish that the various drugs were simultaneously possessed. A confidential informant visited the accused's off-post residence in Germany and observed hashish, amphetamines, and heroin in the apartment. During a subsequent search by German and American officials, amphetamines were found in a candy jar and heroin in a cabinet in the living room. Hashish was discovered in a styrofoam box in the bedroom. Thus, the inquiry here narrows to whether a serviceman may be punished for violating a single regulation or statute more than once within a relatively brief time frame. Since the offenses charged do not involve multiple victims, we conclude that the maximum confinement penalty for such multiple possession offenses is confinement at hard labor for 2 years. The accused's criminal conduct amounted to a single act which necessarily must be treated as a single criminal offense applying the presumption previously discussed.[3]

---

2. The severity of the Federal scheme was, as previously noted, the underlying basis for the conclusion that multiple punishment for possessing multiple drugs was permissible.

3. For military practitioners and judges at the trial level who must make future decisions on multiple charging and sentencing for closely related offenses, we offer the following additional guidance. Relatively few, if any, in the appellate judiciary or society in general would quarrel with the notion that an individual properly convicted should be appropriately punished. For some, appropriate punishment is equated with lengthy confinement; for others, confinement is merely a vehicle to assure an

offender's presence for rehabilitation. To far too great a degree, however, multiplicious charging appears to be used solely as a vehicle to encourage stiffer sentences. We unequivocally condemn this approach to the administration of criminal justice as does paragraph 26*b* of the Manual for Courts-Martial, United States States, 1969 (Rev.). It is, or should be, foreign to our judicial process to attempt to mold a jury's or judge's findings and sentence by resort to multiple charging of offenses which arise out of the same transaction. *See* ABA Standards, Joinder and Severance § 2.2 (1968). Even though there may be instances, such as the present case, in which unnecessary multi-

Having concluded that the charges should have been treated as a single offense, we turn to the question of prejudice. The court members adjudged a period of confinement totaling 5 years, which was reduced by the convening authority to 4 years. The Court of Military Review affirmed the approved sentence. Inasmuch as we have concluded that the maximum imposable penalty was confinement at hard labor for 2 years, prejudice is inherent. Article 59(a), Uniform Code of Military Justice, 10 U.S.C. § 859(a).

The decision of the United States Army Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Army for remand to the Court of Military Review for reassessment of the sentence.

Senior Judge FERGUSON concurs.

COOK, Judge (dissenting):

Whether two or more offenses are separate for the purpose of punishment is a recurrent and troublesome problem. The preeminent factor in resolving the problem is legislative intent, but the difficulty of ascertaining that intent in a particular case has led to other guidelines.[1] All the tests have a degree of flexibility comparable to such constitutional standards as "due process," "reasonable doubt," and "probable cause," with the result that recourse to one or another of them has produced divided opinions.[2] The varying results have created a sense of unease and discomfort among trial and appellate judges, lawyers, and, of course, accused, along with many others concerned with criminal justice. The search for certitude goes on, as it should, but regrettably, I am not convinced that the majority's present effort to fashion a single rule for possession of controlled substances in violation of Army Regulation 600–50 is consistent with the intention of the regulation and better than the subsidiary guidelines followed in the earlier cases that are now cast aside.

As I write in dissent, a point by point catalogue of my differences with the majority can serve no useful purpose. Suffice it to mention one point, as it applies, for example, to *United States v. Mosely*, No. 29,-979, 1 M.J. 350, decided this date. The majority say that "resort to the time and place of acquisition" is "irrelevant" to the question of the separateness of the offenses. In *Mosely*, the evidence shows that the two substances in issue were purchased at different cities in Holland, at different times, and were kept in separate plastic bags when carried into Germany. To me, such evidence establishes not one event in which the two substances "were simultaneously possessed," but two distinct and separate possessions. True, the accused was apprehended with both substances in his possession, but that circumstance does not expunge the earlier incidences of their possession. Thus, "time and place of acquisition" are not, in my judgment, irrelevant circumstances, but rather material circumstances that can dispel the "unity suggested by the allegations in the specifications" and

ple charging returns a premium for the prosecutor, many such "victories" undoubtedly will be short-lived because of the very real risk of appellate attack which ultimately may deprive the Government and hence society of an "appropriate sentence." Most judges as well as juries of the caliber found in the military justice system are perceptive enough to see through shotgun charge sheets and to adjudge what, to them, is an appropriate sentence nevertheless. Yet, an appellate court faced with a substantial disparity between the maximum penalty utilized during a jury's deliberations and the legally appropriate maximum punishment is duty bound to take further ameliorative steps to "cure" the error even though such action may merely retrace the jury's unrecorded deliberations. Due consideration of this Court's approach to multiplicity questions should alleviate the need to formulate specific rules for the myriad of multiplicity combinations. Stated more succinctly, sound legal judgment coupled with a measure of common sense often will eliminate the needless and costly judicial process of factually resolving matters of such questionable legal worth.

1. *Ladner v. United States*, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958).

2. *United States v. Dicario*, 8 U.S.C.M.A. 353, 24 C.M.R. 163 (1957); *United States v. Brown*, 8 U.S.C.M.A. 18, 23 C.M.R. 242 (1957).

350

demonstrate that "the several acts of misconduct are unrelated and discrete." *United States v. Meyer*, 21 U.S.C.M.A. 310, 312, 45 C.M.R. 84, 86 (1972).

Measuring the circumstances of the offenses in this case by the tests of the earlier precedents, especially *Meyer*, I am satisfied that the trial judge and the intermediate reviewing authorities could properly find that the offenses were separate for the purpose of punishment. I would, therefore, affirm the decision of the United States Army Court of Military Review.