UNITED STATES

v.

Staff Sergeant Steven GASH, FR 513–54–6319 63d Field Maintenance Squadron Twenty-Second Air Force (MAC).

ACM 21872 (f rev).

U. S. Air Force Court of Military Review.

Sentence Adjudged 4 June 1975.

Decided 15 Nov. 1976.

Findings of guilty and sentence affirmed.

Appellate Counsel for the Accused: Colonel Robert W. Norris and Captain Thomas S. Markiewicz.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Major Alvin E. Schlechter.

Before BUEHLER, HERMAN and OR-SER, Appellate Military Judges.

## DECISION UPON FURTHER REVIEW

ORSER, Judge:

Pursuant to his pleas, the accused stands convicted of six specifications of wrongful sale of drugs, three each of cocaine and hashish, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The approved sentence is a bad conduct discharge, forfeiture of $229.00 per month for 15 months, confinement at hard labor for 15 months, and reduction to the grade of airman basic.

In our original, unpublished decision in this case, dated 10 September 1975, we affirmed the findings of guilty and sentence without extended discussion. By order dated 6 February 1976, the United States Court of Military Appeals vacated our decision and remanded the record with directions that we hold further proceedings in abeyance pending their disposition of the issues granted in *United States v. Courtney*, 24 U.S.C.M.A. 280, 51 C.M.R. 791, 1 M.J. 438 (1976); *United States v. Graves* [order], (2 July 1976); *United States v. Mosely and Sweisford*, 24 U.S.C.M.A. 173, 51 C.M.R. 392, 1 M.J. 350 (1976); and *United States v. McCarthy*, 2 M.J. 26 (24 September 1976).

On the basis of the foregoing events, we first address the question of whether four of the offenses are "service connected" as that phrase was used by the United States Supreme Court in *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). As the Court of Military Appeals instructed in *McCarthy*, resolution of the issue requires that we subject the circumstances to a thorough analysis in terms of the 12 jurisdictional criteria enunciated

by the Supreme Court in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971). *United States v. Hedlund*, —— M.J. —— (17 September 1976).

The offenses for examination are off-base sales of cocaine and hashish to an agent of the Air Force Office of Special Investigations (OSI) who, replete with beard and long hair, posed as a member of the civilian community. Though the case was tried on 4 June 1975, well before the recent line of service connection cases were decided by the Court of Military Appeals,[1] the trial defense counsel exhibited commendable concern for the issue. Specifically, he moved for dismissal of the off-base offenses on the basis of an absence of service connection. In support of his motion he relied primarily on the case of *United States v. Blancuzzi*, 46 C.M.R. 922 (N.C.M.R.1972), wherein the Navy Court of Military Review concluded there was no service connection in an off-base controlled sale of lysergic acid diethylamide (LSD) to a military investigator, since the possession as a result of the sale could not be considered unlawful, nor detrimental to the health, morale or fitness of the agent buyer. *See United States v. Rose*, 19 U.S.C.M.A. 3, 41 C.M.R. 3 (1969); *compare United States v. Morley*, 20 U.S.C.M.A. 179, 43 C.M.R. 19 (1970). The Navy Court also noted as significant that the accused was being prosecuted in the state courts of California for the same offenses.

In response to the motion, the trial counsel presented a stipulation of fact concerning the circumstances and relied primarily on the case of *United States v. Sexton*, 23 U.S.C.M.A. 101, 48 C.M.R. 662 (1974). In *Sexton*, the Court of Military Appeals determined that an off-base sale of marihuana to a serviceman informer was triable by court-martial. Following argument, the military judge denied the motion. Presumably on the basis of the case law then

---

1. E. g., *United States v. McCarthy* and *United States v. Hedlund*, both supra; *United States v. Moore*, 1 M.J. 448 (16 July 1976); *United States v. Tucker*, 1 M.J. 463 (3 September 1976); *United States v. Uhlman*, 24 U.S.C.M.A. 256, 51 C.M.R. 635, 1 M.J. 419 (1976); *United States v. Black*, 24 U.S.C.M.A. 162, 51 C.M.R. 381, 1 M.J. 340 (1976).

extant,[2] the judge neither imposed a special burden on the Government to affirmatively establish service connection nor elaborated on his implicit finding that the offenses were triable by court-martial. See *United States v. McCarthy*, supra, footnotes 1 and 2.

Thereafter, the accused providently pleaded guilty to all offenses. The Government's evidence consisted exclusively of the referenced stipulation of fact. Stripped to essentials, the stipulation reflects the following events and circumstances.

On 19 March 1975, an OSI agent surnamed Henry, working as an undercover narcotics agent, met the accused in a parking lot of the accused's unit of assignment on Norton Air Force Base, California. Following a discussion of such matters as price, quantity and quality of drugs, the accused sold the agent approximately three grams of hashish and .3 grams of cocaine, for the sum of $60.00.[3] During this meeting, the parties discussed further sales of narcotics. The accused stated he had additional cocaine at his home which would be available for sale the next day. Henry agreed to contact the accused at that time provided he had sufficient funds to make the purchase. The accused also informed the agent he would have a larger quantity of cocaine available in about two weeks.

The following day, the agent dutifully called the accused and reported he had $175.00 to purchase the cocaine. A bargain was duly struck, with the accused agreeing to sell 17 packets of cocaine and one of hashish for the $175.00 sum mentioned by the agent. Pursuant to the agreement,

agent Henry, along with another undercover agent, met the accused later that day at a bowling alley parking lot in the city of San Bernardino, California. There, the transaction was consummated. This sale represents two of the four offenses at issue.

In the midst of the transaction, the accused invited Henry to reestablish contact in ten days to two weeks when he expected to have a large supply of cocaine and an unlimited amount of hashish available for sale. Sometime thereafter, agent Henry called the accused at the latter's residence in the civilian community of Muscoy, California. As before, the two discussed details of the prospective sale and then agreed to meet later that day at the accused's residence. That evening, Henry, in the company of an undercover policewoman, went to the accused's home and the latter sold him 1.5 grams of cocaine and 28 grams of hashish for the sum of $275.00. This transaction represents the remaining two offenses we scrutinize for service connection.

As seen, and similar to the circumstances in *United States v. McCarthy*, supra, where the Court sustained the exercise of jurisdiction over an off-base transfer of three pounds of marihuana, the arrangements for the first questioned drug transaction were made in the accused's unit on the military installation. Moreover, the agreement was directly connected with and an outgrowth of a drug transaction that in all particulars occurred on the installation. The same can be said for the subsequent transaction. Though specifics were not discussed until the day the drugs were conveyed, the gene-

2. At the time of trial the Court of Military Appeals had consistently held that off-base sales of prohibited substances by one member of the military to another had sufficient service connection, or military significance, to warrant court-martial jurisdiction. *Rainville v. Lee*, 22 U.S.C.M.A. 464, 47 C.M.R. 554 (1973); *United States v. Sexton*, and *United States v. Rose*, both supra; cf., *United States v. Mosely*, supra (sale to a civilian narcotics agent in a civilian community not service connected). Of further pertinence, the Court had likewise consistently held that service connection exists as to offenses affecting or involving other members of the military, whether or not the accused was

aware of the military status of such others. *United States v. Comancho*, 19 U.S.C.M.A. 11, 41 C.M.R. 11 (1969); *United States v. Sexton*, supra. *United States v. McCarthy, Hedlund* and *Moore*, all supra, now teach that the mere fact the victim of the offense, or, in the present context, the recipient of the contraband, is a serviceman is an insufficient circumstance, standing alone, to establish service connection.

3. Since these offenses occurred wholly on the military installation they are not included in the issue granted. *Relford v. Commandant* and *United States v. Hedlund*, both supra.

sis thereof was the original on-base parking lot discussion in which the accused implicitly offered for sale an additional larger quantity of cocaine which he expected to have available approximately two weeks later.

Consideration of the foregoing circumstances in terms of the *Relford* criteria, in our judgment, warrants the conclusion that one overriding factor militates in favor of the exercise of military jurisdiction as to all offenses: the criminal intent for each transaction was formulated on the military installation. Here, during the initial on-base discussion and sale, plans were made and the stage was thus set for all transactions that followed. In context, all sales were incidents of a continuing business arrangement formulated and commenced on the base. The sales were consummated in the civilian community merely as an accommodation to the accused. In *United States v. McCarthy*, supra, though the Court found a total of four factors weighing in favor of the military exercising its jurisdiction, the first, and perhaps the most significant, was that the criminal intent was formulated on-post, even though the physical transfer occurred "just outside" the installation boundary. Such reasoning is perfectly harmonious with that of the Court in their earlier case of *United States v. Sexton*, supra, where, in addition to the military status of the parties, the Court collaterally stressed that service connection exists when some essential acts are committed on a military installation even though others occur in the civilian community. *United States v. Crapo*, 18 U.S.C.M.A. 594, 40 C.M.R. 306 (1969); *United States v. Rego*, 19 U.S.C.M.A. 9, 41 C.M.R. 9 (1969).

We conclude, therefore, that the military interest in these offenses, formulated as they were on the military installation, and linked as they were to the offenses that were both formulated and executed on the base, is pervasive. Under the circumstances, the military community had the primary, if not singular, interest in prosecuting all offenses. *United States v. McCarthy*. See also *Gosa v. Mayden*, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973).

■ The next issue for resolution is whether the cocaine and hashish sales are multiplicious for sentencing purposes. At trial, the military judge, without objection, determined the offenses were separately punishable. As they were charged under Article 134, Code, supra, he calculated the maximum confinement to be 45 years on the basis of ten years for each sale of cocaine, and five years for each of the hashish sales. Manual for Courts Martial, 1969, (Rev.), paragraph 127c. On the authority of *United States v. Hughes*, 24 U.S.C.M.A. 169, 51 C.M.R. 388, 1 M.J. 346 (1976), and *United States v. Mosely*, 24 U.S.C.M.A. 173, 51 C.M.R. 392, 1 M.J. 350 (1976), and as conceded by appellate Government counsel, each of the three instances of sale of different drugs must be considered a single offense for punishment purposes.

In *Hughes*, the Court of Military Appeals held that simultaneous possession of various controlled drugs, obviously not involving multiple victims, are not separately punishable where all the charges allege a violation of the same lawful general regulation or statute. We perceive no distinction between the multiple simultaneous drug possession offenses considered in that case and the drug sales of this case. Here, as in *Hughes*, multiple victims are not involved. Moreover, the circumstances demonstrate a perfect unity of time in that, on each of three occasions, the accused simultaneously conveyed quantities of cocaine and hashish.[4] Accordingly, and for the purposes of this issue without present regard to a collateral issue of whether the offenses were properly charged as violations of Article 134, Code, supra, the maximum confinement must be

---

4. Though both Article 134, and the corresponding Federal statute (21 U.S.C. 841(b)(1)), for punishment purposes, treat the sale of cocaine, a narcotic drug, as a more serious offense than the sale of hashish, there is no indication in *United States v. Hughes*, supra, nor do we otherwise find, that such factors have a significant bearing on the multiplicity issue. Pertinently the penalty for the unlawful sale of either drug is an identical two years confinement at hard labor when charged under Article 92 as a violation of Air Force Regulation 30–2.

limited to 30 years confinement at hard labor, the amount authorized for the three separate sales of cocaine. Having so concluded, we must further decide what, if any, curative action is required.

■ A "substantial misunderstanding on the accused's part of the maximum punishment to which he is subject" may render a plea of guilty improvident. *United States v. Windham*, 15 U.S.C.M.A. 523, 525, 36 C.M.R. 21, 23 (1965); *United States v. Towns*, 22 U.S.C.M.A. 600, 48 C.M.R. 224 (1974). In the recent case of *United States v. Harden*, 24 U.S.C.M.A. 76, 51 C.M.R. 249, 1 M.J. 258 (1976), the Court of Military Appeals determined that the accused's plea of guilty was improvident where predicated on an understanding that the maximum authorized confinement was 20 years as contrasted with a legal limit of 10 years on the basis of duplicative offenses. In so holding, the Court iterated its view that there is no "fixed formula by which to determine the magnitude of difference in punishment that would warrant vacating a plea of guilty as improvident." *Id.*, at 259. Each case, therefore, is different, and resolution of the issue requires careful evaluation of the particular facts and circumstances.

Mindful of this guidance, and despite the fact that the confinement time differential is 15 years here, whereas it was 10 years in *Harden*, in our opinion the misunderstanding is not of sufficient gravity to improvidence the accused's plea. In *Harden*, the 10-year difference which the Court found "substantial," represented a 100 per cent increase over the legal limit of punishment. In the present case, by contrast, though the 15 year difference superficially appears even more significant, in a more substantive sense, it amounts to but a 50 per cent increase over the actual limit of punishment to which the accused was exposed by his plea of guilty.

Even if we were to concede the difference is "substantial," we would not feel bound to conclude such factor influenced the accused in his decision to plead guilty. *United States v. Harden*, supra. In *United States v. Kleinhans*, 14 U.S.C.M.A. 496, 34 C.M.R. 276 (1964), the accused was charged with two offenses, each believed by all trial participants to authorize confinement for five years, for a total of 10 years. Though the defense counsel acknowledged his awareness that the offenses might be multiplicious for punishment purposes, he asserted that regardless of the ultimate decision on the question, the accused would persist in his negotiated plea of guilty. In finding the plea provident, the Court deemed determinative the fact that the accused was aware of and expressly considered the potential difference in maximum punishment. The Court reached the same result in the recent case of *United States v. Frangoules*, 24 U.S.C.M.A. 317, 52 C.M.R. 28, 1 M.J. 467 (1976), where the military judge determined the maximum confinement was six years versus the defense counsel's position, subsequently vindicated, that the maximum was only two years.

We perceive parallel and equally persuasive circumstances in the case at hand. Though, unlike *Kleinhans*, and *Frangoules*, the defense counsel did not indicate an awareness the offenses might not be separately punishable, his motion that four of the six offenses be dismissed for lack of service connection is indicative that the accused in pleading guilty took into account a significant potential difference in punishment. Specifically, if jurisdiction over the off-base offenses was subsequently found lacking, the maximum confinement penalty would be reduced from 45 years to only 15.

■ We accordingly conclude the accused's pleas of guilty were provident. However, since the military judge imposed punishment on the basis of a significant miscalculation of legal limits of confinement, sentence reassessment is required. *United States v. Frangoules* supra.

In consequence of *United States v. Courtney*, and *United States v. Graves*[5] supra,

---

5. In *Courtney*, the Court held that the maximum punishment for offenses charged as violations of Article 134 must be limited to that imposable under Article 92 for "virtually identi-

we must finally decide (1) whether the accused was denied due process and equal protection of the law by being prosecuted for drug offenses under Article 134, Code, supra, rather than Article 92; and (2) whether, on the basis thereof, and consequent maximum punishment considerations, the accused's plea of guilty was improvident.

■ On the authority of *United States v. De La Fuente*, 2 M.J. 668 (A.F.C.M.R. 16 September 1976) we find no issue of plea providency arising from the manner of charging. In *DeLaFuente*, we held, citing *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), "that the decisions in *United States v. Graves*, supra, and *United States v. Courtney*, supra, have only *prospective* application with respect to the providence of guilty pleas entered in the belief that penalties provided for Article 134 violations were appropriate even though the same misconduct was prohibited under Article 92." We need only add that the instant case, as *DeLaFuente*, was tried long before *Courtney* was decided.

■ Moreover, for the reasons stated in *United States v. Sasportas*, 2 M.J. 676 (A.F.C.M.R. 23 September 1976), the Article 134 manner of charging the offenses is not a deficiency which, of itself, necessitates sentence reassessment. Though here, as in *Sasportas*, the theoretical difference in maximum confinement is substantial, the trial judge, aside from his failure to treat the offenses multiplicious, did not miscalculate the punishment legally imposable at the time of sentencing. When the accused was sentenced, military case law provided that "the mere existence of a general order or regulation cannot decrease the punishment expressly provided in the Table [of maximum punishments, Manual for Courts-Martial, 1969, supra, paragraph 127c] for the same misconduct." *United States v. Walter*, 20 U.S.C.M.A. 767, 43 C.M.R. 207 (1971). Therefore, "since the sentence imposed by the military judge was not based

upon an error in calculating the maximum punishment *then* provided for the the offenses, reassessment is *not* appropriate." *United States v. Sasportas*, supra. We will, of course, reassess the sentence on the basis of our earlier multiplicity determination.

To recapitulate, on the basis of our holding that the multiple offenses were not separate for punishment purposes, the maximum authorized confinement under Article 134, Code, supra, was 30 years instead of the 45 deemed applicable at trial. Even assuming for this discussion that the punishment should have been further limited to that imposable under Article 92, the authorized confinement would have extended to six years. The accused's sentence included confinement for a period of two years. This period was subsequently reduced by the convening authority to 15 months. Thereafter, the convening authority suspended execution of the confinement in excess of 12 months with provision for automatic remission. The period of confinement and that of the suspension have both expired. Such circumstances evidence that any adverse effects upon the sentence have by now been dissipated. *United States v. Mosely*, supra. We have nevertheless reassessed the sentence on the basis of the entire record and find it entirely appropriate.

For the reasons stated, the findings of guilty and the approved sentence are

AFFIRMED.

HERMAN, Judge, joined by BUEHLER, Senior Judge, concurring in the result:

I agree with Judge Orser in all aspects of his opinion save that which states: "Moreover, for the reasons stated in *United States v. Sasportas*, 2 M.J. 676 (A.F.C.M.R. 23 September 1976), the Article 134 manner of charging the offenses is not a deficiency which, of itself, necessitates sentence reassessment," as well as the language quoted from the cited case. How-

---

cal conduct." In *Graves*, the issue involved the accused's plea of guilty to offenses for which the maximum punishment extended to confine-

ment for 60 years versus a limitation of 12 years had the offenses been charged under Article 92.

ever, assuming the military judge erred in calculating the maximum confinement, the lenient sentence imposed and the post-trial action reducing the confinement have dissipated any adverse effects which the accused may have suffered as a result of any such miscalculation. *United States v. Mosely*, 24 U.S.C.M.A. 173, 51 C.M.R. 392, 1 M.J. 350 (1976).