**UNITED STATES, Appellee,**

v.

**Specialist Four Bruce A. BENNETT, SSN 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, United States Army, Appellant.**

**CM 433997.**

U. S. Army Court of Military Review.

26 July 1977.

Albert T. Jones, Esquire, argued the cause for appellant. With him on the brief were Colonel Alton H. Harvey, JAGC, Lieutenant Colonel John R. Thornock, JAGC, Captain Buren R. Shields, III, JAGC, Captain Anthony J. Siano, JAGC, and Captain Donald R. Jensen, JAGC.

Captain Dale L. Anderson, JAGC, argued the cause for appellee. With him on the brief were Colonel Thomas H. Davis, JAGC, and Major Michael B. Kennett, JAGC.

Before JONES, FULTON and FELDER, Appellate Military Judges.

## OPINION OF THE COURT

FULTON, Judge:

Accosted by German policemen as he emerged into the hallway from his off-post

apartment in Germany, the appellant dropped a package containing six packets of heroin (.06 gram). A search of his person uncovered a hypodermic needle and syringe. Searching his apartment, the polizei found 16 more packets of heroin (.74 gram) in plain view on a shelf near the door, an additional 4.85 grams concealed in the base of a record turntable, and a trace (.01 gram) of marihuana on a small clip lying on a postal scale.

The appellant was charged with wrongfully possessing all 5.65 grams of heroin and .01 gram of marihuana in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934, and possessing the needle and syringe in violation of Article 92, UCMJ, 10 U.S.C. § 892. He pleaded guilty to possessing drug paraphernalia and heroin in the amount of .06 gram, and not guilty to possessing the additional quantity of heroin and marihuana found in his apartment. A general court-martial found him guilty as charged and sentenced him to a dishonorable discharge, total forfeitures, confinement at hard labor for seven years, and reduction to Private E–1. The sentence was approved by the convening authority.

Appellate review of his case has been delayed pending final resolution of the question whether an accused is denied equal protection of the laws if charged with drug offenses under Article 134 rather than under Article 92 of the Code. *See United States v. Courtney*, 1 M.J. 438 (1976). The issue has been resolved against the appellant and all others tried before the *Courtney* decision. *United States v. Jackson*, 3 M.J. 101 (C.M.A. 1977). The remaining issues may now be resolved.

The appellant's defense against the charge of possessing the heroin and marihuana found in his apartment was that the drugs were not his and he did not know they were there. He introduced evidence indicating that the apartment was often left unlocked and was available to and used by a coterie of friends, American and German. At least one other soldier, Private First Class Crumpler, kept some of his clothing there (and, according to his own testimony, used heroin there). The key was not always in the appellant's possession; in fact the appellant asserted that he had been away at a firing range since 3 June and an unidentified person had had the key during that period. Also, it was contended that the turntable, in which the bulk of the heroin was found, belonged to a soldier named Shew—it having been sold to him four days earlier although payment and delivery were incomplete. Shew occupied another apartment in the same building.

I

On the evening in question (5 June 1975), the German police had the building under surveillance because an informant had telephoned them and said that the appellant and Shew would engage in a drug transaction there that night.[1] The appellant asserts that the trial judge erred in denying a defense motion for disclosure of the identity of that informant. It is contended that his testimony was necessary to the defense because he must have known of the drugs in the appellant's apartment and therefore,

---

[1.] The appellant and Shew were not present when the surveillance began at about 1900 hours. The appellant testified that he returned from the range that morning, received the key to his apartment, stayed at the unit until after duty hours, then went directly to Shew's apartment in the same building and not to his own. He said that he and Shew went to George's Bar and that, while they were there, Shew gave him the six packets of heroin, the needle, and the syringe. Shew was to have delivered these to a German called "Jimmy", but did not intend to stay at George's Bar, so the appellant had agreed, he said, to hold and deliver those items.

His return to the apartment building came about when a Sergeant Lewis, returning briefly from the firing range, wanted to obtain cigarettes from the apartment for PFC Crumpler, who had remained at the range. Lewis drove the appellant to the apartment and waited in the car. When the appellant went inside the building, the policemen could not catch up with him, but met him as he emerged from the apartment. As they sought to question him, he dropped the six packets of heroin. Most of the sixteen packets found inside the apartment were similarly wrapped.

may have known how they happened to be there.[2] The difficulty with the appellant's position is that the informant did not say there were drugs in the appellant's apartment, did not indicate that the transaction was to occur at the apartment, or even that heroin was the drug involved.[3]

The informant was described by the police as a German, not a member or employee of the American forces, not connected with the apartment building or its occupants; not known to be himself involved with drugs; and one who had proved reliable on previous occasions.

The Government's privilege against disclosure of an informant's identity must yield if disclosure "is necessary to the accused's defense on the issue of guilt or innocence. Whether such a necessity exists will depend upon the particular circumstances of each case, taking into consideration the offense charged, the possible defenses, the possible significance of the informant's testimony, and other relevant factors." Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 151*b*(1). That rule is quoted from the opinion of the Supreme Court in *Rovario v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), in which the Court describes the problem as one calling for "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 62, 77 S.Ct. at 628–29; American Bar Association Project on Standards for Criminal Justice, Standards relating to Discovery and Procedure Before Trial, § 2.6(b) at 91–92 (Oct. 1970). In general, disclosure has not been required unless the informant was an active participant in or witness to the crime charged. *United States v. Skeens*, 145 U.S. App.D.C. 404, 449 F.2d 1066, 1071 (1971).

◼ The accused's burden to establish that the informant's identity is necessary to his defense is not satisfied by mere speculation. *United States v. Marshall*, 532 F.2d 1279, 1282 (9th Cir. 1976); *United States v. Marshall*, 526 F.2d 1349, 1359 (9th Cir. 1975), *cert. denied*, 426 U.S. 923, 96 S.Ct. 2631, 49 L.Ed.2d 376 (1976); *United States v. Skeens, supra*, at 1070.

◼ The appellant's argument is too speculative to show that the informant's testimony was necessary to the question of guilt or innocence. The evidence indicated that the informant was not involved with drugs and not connected with the apartment. His communication to the police did not indicate that the transaction was to take place in the appellant's apartment (hence the entrance to the building rather than the entrance to the apartment was under surveillance), or even that the subject of the transaction was heroin. So far as appears, therefore, the informant was not a participant or witness, but a mere tipster. More is required before the privilege of nondisclosure must yield. *Compare United States v. Skwarek*, 37 C.M.R. 944 (A.F.B.R. 1967), *pet. denied*, 17 U.S.C.M.A. 652, 38 C.M.R. 441 (1967), *with United States v. Hawkins*, 6 U.S.C.M.A. 135, 19 C.M.R. 261 (1955); *see United States v. Miller*, 43 C.M.R. 671, 672 (1971), *aff'd on other grounds*, 21 U.S.C.M.A. 92, 44 C.M.R. 146 (1971).

II

◼ The appellant next asserts that the evidence is insufficient to support a finding of guilty of possession of marihuana. He urges that we adopt the "usable quantity" doctrine, which seems to prevail in several states and the District of Columbia. Under it, possession of a drug quantity so minute that it can neither be sold nor used is not an

---

**2.** What has sometimes been called a judicial guessing game concerning the informant's possible testimony might be avoided by an in camera interview. *See United States v. Fischer*, 531 F.2d 783, 787–788 (5th Cir. 1976); *United States v. Rawlinson*, 487 F.2d 5 (9th Cir. 1973), *cert. denied*, 415 U.S. 984, 94 S.Ct. 1579, 39 L.Ed.2d 881 (1974); *United States v. Jackson*, 384 F.2d 825 (3d Cir. 1967); *United States v.*

*Day*, 384 F.2d 464, 466–70 (3d Cir. 1967) (McLaughlin, J., concurring).

**3.** There is no indication that the informant had been in the appellant's apartment. *Cf. Honore v. Superior Court*, 70 Cal.2d 162, 74 Cal.Rptr. 233, 449 P.2d 169 (Cal.1969).

offense for one or both of two reasons: the legislature did not intend to proscribe possession of a nondangerous quantity, or the possession was not knowing. To this the appellant adds that possessing an amount so minute cannot be service-discrediting or prejudicial to good order and discipline within the meaning of Article 134, UCMJ, *supra.*

The usable quantity doctrine was considered and rejected in *United States v. Jeffers*, 524 F.2d 253, 256–58 (7th Cir. 1975). Although that case involved the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801 *et seq.*, rather than the Uniform Code of Military Justice, Manual for Courts-Martial, or Army regulations enforceable under Article 92, UCMJ, *supra,* the reasoning of *Jeffers* is apposite. There is no legislative or regulatory indication that criminality is to be limited by the amount of a drug wrongfully possessed, and whether an accused *knowingly* possessed the drug can be dealt with without resorting to the usable quantity doctrine. *United States v. Jeffers, supra* at 257; *see, e. g., United States v. Alvarez*, 10 U.S.C.M.A. 24, 27 C.M.R. 98 (1958).

■ The appellant testified that the postal scale involved belonged to Shew and that he had last seen it in Shew's apartment. There is, however, no evidence that Shew entered the appellant's apartment in the latter's absence. The postal scale was in full view atop the refrigerator; postal scales are used to weigh drugs as well as letters; and the marihuana residue was not on the scale, but on a small clip of the type used to assist in smoking marihuana cigarettes. Conceding that the appellant does not himself smoke, there nevertheless was sufficient evidence from which the triers of fact could conclude that his possession of marihuana was knowing. We share that conclusion. The appellant testified that his apartment was visited by Germans and Americans. Civilians (German policemen) made the apprehension and search. The appellant was searched in the building manager's apartment or office, and his lease was terminated because of the apprehension. There is no doubt that his activities, including the possession of marihuana, were service-discrediting.

### III

While the appellant has assigned several other errors, they clearly are not meritorious excepting two that may affect the sentence. In his argument regarding the sentence, the trial counsel cited three purposes of sentencing, namely, rehabilitation, punishment, and deterrence. Then, with respect to deterrence, he said, "The effect of a sentence on future conduct not only by the accused but by other people is almost universally recognized." He then asked "for a sentence which does include a significant amount of confinement." The sentence adjudged included confinement at hard labor for seven years.

■ The notion that the deterrent effect on others might justify punishment more severe than otherwise deserved, and an argument somewhat like that quoted above, were condemned in *United States v. Mosely*, 24 U.S.C.M.A. 173, 51 C.M.R. 392, 1 M.J. 350 (1976). If that decision applies to sentences passed before it was announced, a rehearing or reassessment of the appellant's sentence is required.

■ Additionally, the parties, the judge and court members, the staff judge advocate, and the convening authority, misunderstood the maximum punishment. They viewed the maximum as including confinement for seventeen years (two years for a violation of Article 92, ten years for possessing heroin in violation of Article 134, and five years for possessing marihuana in violation of the same Article.) Charges of simultaneously possessing different drugs in substantially the same location have been held to be multiplicious for sentencing purposes. *United States v. Hughes*, 1 M.J. 346 (1976). If that decision applies to cases tried earlier, a rehearing or reassessment of the sentence is required, for the maximum authorized confinement would have been for a term of twelve years instead of seventeen.

**908**

The Government argues that neither the *Hughes* nor the *Mosely* decisions are to be applied retroactively to cases tried earlier.

In several published decisions, Courts of Military Review seem to have applied the *Hughes* and *Mosely* decisions sub silentio to cases under direct review even though they may have been tried before the date of those decisions (19 March 1976). *See United States v. Chastain*, 54 C.M.R. 765, 2 M.J. 735 (A.F.C.M.R.1976) (multiplicity); *United States v. Gash*, 54 C.M.R. 463, 468–69, 2 M.J. 707, 710–11 (A.F.C.M.R.1976) (multiplicity); *United States v. Meck*, 54 C.M.R. 239, 242–43, 2 M.J. 308, 310–11(A.F.C.M.R. 1976) (counsel argument); *see also United States v. Jones*, 3 M.J. 869 (A.C.M.R. 12 July 1977). No doubt perusal of the unpublished decisions of the Courts of Military Review would disclose other instances.

This comports with past practice. For example, while holding that *O'Callahan v. Parker*, 395 U.S. 258 (1969), would not be given full retrospective effect (*i. e.*, not applied to cases already final), the Court of Military Appeals noted that it already had applied the *O'Callahan* principles to cases still undergoing direct review. *Mercer v. Dillon*, 19 U.S.C.M.A. 264, 265, 41 C.M.R. 264, 265 (1970); *accord, United States v. Gutierrez*, 42 C.M.R. 521 (A.C.M.R. 1970) (8–4 decision). It likewise comports with a recent observation by the Supreme Court:

> Our prior decisions establish a general rule that a change in the law occurring after a relevant event in a case will be given effect while the case is on direct review. *United States v. Schooner Peggy*, 1 Cranch 103, 2 L.Ed. 49 (1801); *Linkletter v. Walker*, 381 U.S. 618, 627, 85 S.Ct. 1731, 1736, 14 L.Ed.2d 601 (1965); *Bradley v. School Board of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974).

---

4. Any greater degree of retrospectivity so as to affect convictions presumably final, requires an affirmative pronouncement. *Compare Belicheusky v. Bowman*, 21 U.S.C.M.A. 146, 44 C.M.R. 200 (1972), *with Mercer v. Dillon*, 19 U.S.C. M.A. 264, 41 C.M.R. 264 (1970). Similarly, refusing to apply the change to cases still undergoing direct review seems to require expli-

*Hamling v. United States*, 418 U.S. 87, 101–102, 94 S.Ct. 2887, 2899–2900, 41 L.Ed.2d 590 (1974), *rehearing denied*, 419 U.S. 885, 95 S.Ct. 157, 42 L.Ed.2d 129 (1974).[4]

Accordingly, we will continue to apply the *Hughes* and *Mosely* decisions to cases tried before the date of those decisions, but still undergoing direct review.

 The findings of guilty are affirmed. Reassessing the sentence on the basis of the errors noted and the entire record, the Court affirms only so much of the sentence as provides for dishonorable discharge, confinement at hard labor for four years, forfeiture of all pay and allowances, and reduction to the grade of Private E–1.

Senior Judge JONES and Judge FELDER concur.

---

cation. *See United States v. Jackson*, 3 M.J. 101 (C.M.R. 1977); *compare United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969), *and United States v. Green*, 1 M.J. 453 (1976), *with United States v. Rinehart*, 8 U.S.C.M.A. 402, 409, 24 C.M.R. 212, 219 (1957), *and United States v. Elliott*, 8 U.S.C.M.A. 548, 550 n. 3, 25 C.M.R. 52, 54 n. 3 (1957).