UNITED STATES

v.

**Staff Sergeant Walter L. SPENCE, FR 242–50–4556 6580th Medical Services Squadron Air Force Military Training Center (ATC)**

**ACM S24496.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 6 Dec. 1976.

Decided 3 Aug. 1977.

Appellate Counsel for the Accused: Colonel Robert W. Norris and Captain David A. Bateman.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr.

Before BUEHLER, HERMAN and ORSER, Appellate Military Judges.

## DECISION

ORSER, Judge:

The accused was tried by a special court-martial, with members, on charges alleging two wrongful transfers and one attempted wrongful transfer of cocaine, in violation of Articles 92 and 80 of the Uniform Code of Military Justice, 10 U.S.C. §§ 892, 880. He was convicted of only the attempted transfer offense and sentenced to a bad conduct discharge, confinement at hard labor for three months, forfeiture of $250.00 per month for three months, and reduction to the grade of airman basic. The adjudged sentence has been approved by both the convening and supervisory authorities.

### I.

In the initial assertion of error we consider, appellate defense counsel contend the court-martial lacked jurisdiction to try the accused for the attempted transfer of cocaine as the Government failed to establish that the offense was service connected as that phrase was explained by the United States Supreme Court in *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969) and *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971). We do not agree.

In *United States v. McCarthy*, 25 U.S.C.M.A. 30, 54 C.M.R. 30, 2 M.J. 26 (1976) and *United States v. Hedlund*, 25 U.S.C.M.A. 1, 54 C.M.R. 1, 2 M.J. 11 (1976), the United States Court of Military Appeals made it crystal clear that resolution of service connection issues requires that the particular circumstances be subjected to a thorough analysis in terms of the oft-cited twelve criteria enumerated in *Relford v. Commandant*, supra. To sustain the exercise of jurisdiction by a military tribunal necessitates a finding, supported by the facts, that the "military interest in deterring the offense is distinct from and greater than that of civilian society, and . . . [that] the distinct military interest . . . can [not] be vindicated adequately in civilian courts." *Schlesinger v. Councilman*, 420 U.S. 738, 760, 95 S.Ct. 1300, 1314, 43 L.Ed.2d 591 (1975).

The offense for present analysis occurred in the parking lot of the La Quinta Motel located in the City of San Antonio, Texas. A government informant in the employ of the Lackland Air Force Base Office of Special Investigations (OSI), made a telephone call to the accused and solicited the purchase of a quantity of cocaine. The record shows the informant, an Airman Robinson, placed the call from the OSI office to the accused at his off-base residence.

According to the informant, the accused agreed to supply the requested cocaine and arrangements were made to meet and make the transfer behind the La Quinta Motel, which is near Lackland Air Force Base. Shortly thereafter, Robinson, after being searched and supplied with marked money by the OSI, proceeded to the designated location. Several OSI agents followed and discreetly surveilled the scene where the transaction was to occur. The accused arrived and he and Robinson rendezvoused in the accused's automobile. When the accused attempted to transfer the cocaine (approximately .58 grams in quantity) the lurking OSI men apprehended him.

The jurisdiction issue concerning the attempted transfer offense, as well as one of the two charged cocaine transfer offenses,

was thoroughly litigated during trial at the time the accused was arraigned. Evidence presented by the Government showed that the two charged completed cocaine transactions preceded the attempted transfer. Sequentially, the initial alleged transfer occurred on 20 May 1976, at the accused's off-base residence. The second charged transfer occurred on 9 June 1976, at Lackland Air Force Base. The attempted transfer occurred three days later, on 12 June 1976. All alleged transfers involved Robinson, who at the time was an airman in the United States Air Force. The record shows the accused was a staff sergeant assigned to the dental facility at Lackland Air Force Base.

Robinson testified he was introduced to the accused at a civilian residence. He thereafter encountered the accused at a Lackland Air Force Base dining facility. The accused was in uniform and on his lunch break. According to Robinson, the two conversed and the accused supplied him with his telephone number and informed him he had cocaine for sale at any time he wanted any.

On 20 May 1976, at the instigation of agents of the OSI, the informant placed a telephone call to the accused at the latter's place of military duty for the purpose of arranging a controlled buy of cocaine. The accused told Robinson he was presently busy and to call again later in the day. A second call was duly made and arrangements were made for the drug transaction. Robinson testified the transfer occurred on that same day at the accused's off-base residence. The informant paid the accused $75.00 for the drug which the accused allegedly represented as "good . . . pharmaceutical coke." The accused supposedly informed Robinson that he could supply additional cocaine if he wanted it.

On 9 June 1976, the informant made the second alleged purchase of cocaine from the accused. This transaction occurred in the parking lot of the Wilford Hall Medical Center on Lackland Air Force Base. At the time of this transaction the accused reportedly informed Robinson, "Any time you

want any more of that—any more of that coke, let me know because I've got as much as you want." Robinson related he told the accused he did desire more and would make further contact for that purpose. Just three days later, on 12 June 1976, the previously described attempted cocaine transfer, the sole offense of which the accused was convicted, occurred in the La Quinta Motel parking lot.

On the basis of the foregoing circumstances, the military judge made special findings of fact in support of his conclusion that the military interest in both off-base offenses was pervasive. He found that the evidence demonstrated the following factors which sufficed to establish service connection:

1. The formation of criminal intent for the offenses on base;

2. The military status of both parties;

3. The flouting of military authority; and

4. A course of conduct posing a threat to military personnel and the military community.

With respect to the fourth factor, the military judge found that the 12 June transaction was interrelated with the other offenses in the sense that it was an incident of a continuing course of conduct by the accused that flowed directly from the initial discussions.

Upon careful consideration of the *Relford* criteria in terms of the instant circumstances, we are convinced that the military judge was correct in his finding of service connection. We concur with the judge's conclusion that the 12 June attempted transfer was a further incident of a continuing course of criminal conduct by the accused that flowed from and was interrelated with prior on-base discussions and arrangements concerning the drug cocaine. The attempted cocaine transfer was directly linked to the alleged on-base transfer which occurred just three days earlier. During that transaction the accused offered to supply the informant Robinson with further and unlimited amounts of cocaine at

the latter's desire. In context, the attempted offense was part and parcel of an ongoing sales arrangement that commenced on the military installation, and at all times centered around the military, not the civilian community. See *United States v. McCarthy*, supra; *United States v. Gash*, 54 C.M.R. 463, 2 M.J. 707 (A.F.C.M.R.1976).[1] Moreover, and focusing now solely on the circumstances surrounding the attempted transfer offense, although the accused was off-base at the time the transfer arrangements were telephonically made, the Government informant was on-base. We do not agree with the position urged by appellate defense counsel that in deciding the jurisdiction issue before us we must apply strict essentials of contract law. Regardless of whether the informant or the accused accepted the other's offer to sell cocaine (and according to the informant's testimony he accepted the accused's offer, not the converse), the important factor for service connection purposes is that at least one of the parties was on the installation when the drug bargain was made.

We are likewise convinced the accused, a staff sergeant, flouted, that is, treated with contempt and scorn, military authority in a very real sense in his drug dealings with the informant who was at the time a military subordinate. The military relationship between the two individuals is in our view sufficient of itself to constitute the "unusual circumstance" causing the "high degree of military interest and concern" necessary for service connection. *United States v. Hedlund*, supra. As aptly stated by the Army Court of Military Review in *United States v. Eggleston*, 54 C.M.R. 634, 635, 2 M.J. 1066, 1067 (A.C.M.R.1976):

> When noncommissioned officers are willing to dispense drugs to their juniors in the same unit, with or without using the influence of their rank, the military concern is heightened and civilian interest pales in comparison.

Flouting of military authority is further indicated in the accused's use of a Government telephone at his duty section in making the arrangements for the initial alleged transfer of cocaine to the informant.

Finally, this Court has held that off-base sale of cocaine to fellow service members, and even use and possession of the drug, are service-connected offenses. *United States v. Chastain*, No. 21905 (f. rev.), 2 M.J. 735 (A.F.C.M.R. 27 December 1976); *United States v. Alef*, No. 21879 (f. rev.), 2 M.J. 317 (A.F.C.M.R. 24 November 1976); *United States v. Gash*, No. 21872 (f. rev.), 54 C.M.R. 463, 2 M.J. 707 (A.F.C.M.R. 15 November 1976).[2] We believe the transfer of the potentially very harmful narcotic drug posed a significant threat both to the recipient and to the military community as well.[3]

1. In passing, we reject an argument by appellate defense counsel which apparently seeks to deny this Court the military judge's pre-findings vantage point in considering the service-connection issue before us. Counsel argue that since the court-martial acquitted the accused of the two charged cocaine transfer offenses which preceded the sole offense of appellate concern, we are estopped from considering any of the circumstances which relate to such offenses. We most emphatically disagree. The court members decided the ultimate issue of the accused's guilt or innocence, not the interlocutory question of jurisdiction. By their findings, they decided that the evidence was insufficient to establish beyond a reasonable doubt that the accused transferred heroin on 20 May and 9 June 1976, and conversely, that the evidence was sufficient to establish beyond a reasonable doubt that he attempted to transfer cocaine on 12 June 1976. The court members made no findings respecting any of the circumstances surrounding the offenses. For example, and as pointed out by appellate government counsel, in their verdict, the members made no finding that the accused did not meet with Robinson at the Wilford Hall parking lot, or that the accused did not on that occasion offer to sell Robinson cocaine. The findings action of the trial court notwithstanding, the evidence presented by the Government to meet its burden of establishing jurisdiction remains in the record for our appellate determination of the issue.

2. The Court of Military Appeals has granted petitions for review in the *Chastain, Alef* and *Gash* cases.

3. See Goodman and Gilman, The Pharmacological Basis of Therapeutics, Fifth Edition, 1975, page 304 cited by appellate government counsel in their brief.

We accordingly conclude that the military community had the overriding, if not the singular, interest in prosecuting the attempted cocaine transfer offense along with the two cocaine offenses of which the accused was acquitted. See *Peterson v. Goodwin*, 512 F.2d 479 (5th Cir. 1975), cert. denied, 423 U.S. 931, 96 S.Ct. 282, 46 L.Ed.2d 260 (1976). In our judgment, the circumstances detailed present a distinct military concern in the offenses which could not be adequately vindicated in the civilian courts. *Schlesinger v. Councilman*, supra.

## II.

Appellate defense counsel next complain that the military judge erred in permitting testimony indicating the accused had a bad reputation in the community. Again we disagree.

During the presentencing stage of the trial, the defense counsel introduced a total of 16 of the accused's performance reports (APRs) reflecting his performance of duty in the Air Force from 4 November 1963 through 19 July 1976. Over defense objection, the military judge thereafter acceded to the trial counsel's position that the APRs constituted evidence of good character which the Government was entitled to rebut.

The Government's rebuttal evidence consisted of the testimony of an OSI agent named Picciuti whose knowledge of the accused was gained through his participation in criminal investigations. In response to questions by the prosecutor, Agent Picciuti testified:

That from February 1976 until December 1976, he associated with other individuals who lived in the same community and were acquainted with the accused;

That during that same period he resided in the same community as the accused; and

As a result of his contact with acquaintances of the accused, he became aware that the accused's reputation in the community was bad.

Appellate defense counsel argue that the mere introduction of performance reports into evidence does not automatically raise the issue of the accused's good character. Moreover, they say, and even assuming *arguendo* that such evidence did place the issue of good character before the court, the bad reputation testimony by Agent Picciuti was improperly admitted because an inadequate foundation was laid therefor. We do not concur.

■ Performance reports introduced in the accused's behalf are by their nature intended to portray good character. As the United States Court of Military Appeals has held on a number of occasions, evidence of a person's military performance relates to his character. *United States v. Hamilton*, 20 U.S.C.M.A. 91, 42 C.M.R. 283 (1970); *United States v. Schultz*, 18 U.S.C.M.A. 133, 39 C.M.R. 133 (1969); *United States v. Barnhill*, 13 U.S.C.M.A. 647, 33 C.M.R. 179 (1963); *United States v. Browning*, 1 U.S.C.M.A. 599, 5 C.M.R. 27 (1952). It follows that where the defense raises the issue of the accused's military record and standing by use of his performance reports, the door is opened for rebuttal evidence by the Government relevant to his character. See *United States v. Hamilton, supra; United States v. Plante*, 13 U.S.C.M.A. 266, 32 C.M.R. 266 (1962).

■ With respect to the foundation argument, as seen, the testimony of the OSI agent was nonspecific in the sense that it did not single out any particular character trait. Such testimony merely informed the court that the accused's general repute in the community was bad. The fact that the reputation testimony was provided by an investigating agent of the Government did not *per se* render it inadmissible. In that regard, paragraph 138*f*(1) of the Manual for Courts-Martial, 1969 (Rev), provides only the testimony of this nature by one who has merely visited the community of a person for the purpose of investigating his character is inadmissible. Thus such testimony must be given by someone whose knowledge of that reputation was gained from having himself been a member of the community involved.

Here, in qualifying Picciuti, the Government showed that the agent was a member of the same military community as the accused, and that he became aware of the accused's reputation through contacts with other residents in the same community over an extended period of time. The fact that such contacts were made during investigations relating to the accused and others, in our judgment, affects only the weight, not the admissibility of the witness' testimony. We accordingly hold that the military judge did not abuse his discretion in permitting the witness to testify on the fact issue of the accused's general reputation.

### III.

■ Appellate defense counsel further complain that the accused suffered prejudice as a result of an improper sentencing argument by the trial counsel. In the first of two specific points on this issue, counsel aver the trial counsel improperly requested that to help deter future similar crimes a more severe punishment be imposed than warranted solely by the evidence. See *United States v. Mosely*, 24 U.S.C.M.A. 173, 51 C.M.R. 392, 1 M.J. 350 (1976).

In the light of the overall sentence argument context, we find no impropriety in the remarks of the trial counsel. Admittedly, he alluded to general deterrence language reminiscent of that found unacceptable by the Court of Military Appeals in the *Mosely* case. However, we are satisfied that his argument as a whole told the court members they were required to give the accused individualized consideration. *United States v. Mamaluy*, 10 U.S.C.M.A. 102, 27 C.M.R. 176 (1959). Under the circumstances, our reasoning and decision in *United States v. Davic*, No. S24354, 1 M.J. 865 (A.F.C. M.R. 18 May 1976), is dispositive of this aspect of the issue.

■ In their other specific complaint, counsel perceive an even more serious breach of propriety in trial counsel's argument that a severe sentence was necessary to support efforts by the United States Government to eliminate drug traffic from Mexico, Turkey, and other countries. We agree that the argument was improper.

Trial counsel's argument intimated that political relations between the United States and other nations, at least in the area of controlling the flow of illicit drugs, was a separate and important sentencing consideration. The argument strikes us as similar to an appeal to a court-martial to predicate its decision upon the probable effect of its actions on the relations between the military and the civilian community. Such an argument has been held improper. *United States v. Boberg*, 17 U.S.C.M.A. 401, 38 C.M.R. 199 (1968); *United States v. Cook*, 11 U.S.C.M.A. 99, 28 C.M.R. 323 (1959); *United States v. Mamaluy*, supra. As the Court declared in the *Mamaluy* case, the argument "pose[s] theories which are not supported by testimony and which operate as a one-way street against the accused." 27 C.M.R. 181.

Although the cases on this subject were tried on foreign soil, the fact that the present court-martial had its situs in Texas does not render the trial counsel's argument significantly less offensive. As in the cited cases, the present argument suffers from the fact that undue emphasis was placed upon United States Government vis-a-vis foreign government relations in the specific area of drug suppression efforts. See *United States v. Boberg; United States v. Cook*, and *United States v. Mamaluy*, all supra. We accordingly find that the trial counsel's remarks injected improper matter into the case and thereby exceeded the bounds of fair comment.

Left for determination is whether there is a fair risk the argument has an appreciable effect upon the court members. *United States v. Gerlach*, 16 U.S.C.M.A. 383, 37 C.M.R. 3 (1966); *United States v. Simpson*, 10 U.S.C.M.A. 229, 27 C.M.R. 303 (1959); *United States v. Davis*, 47 C.M.R. 50 (A.C. M.R. 1973), pet. denied, 48 C.M.R. 999 (1973). In their brief, appellate government counsel correctly note that trial defense counsel interposed no objection to trial counsel's words. In *United States v. Miller*, 24 U.S.C.M.A. 181, 51 C.M.R. 400, 1 M.J. 357 (1976), the Court of Military

Appeals declined to resolve an improper government deterrence argument against the accused on the basis of the absence of a defense objection. The Court felt, nevertheless, impelled to find prejudice, since the military judge emphasized the trial counsel's error by instructing the court that they could consider all matters in aggravation they had heard. Here, as in *Miller*, the defense did not object to trial counsel's argument. However, although the military judge failed *sua sponte* to interrupt the argument, unlike *Miller* he at least did not underscore and emphasize the improper argument through use of an aggravating circumstance instruction. In his instructions, he limited the court members to consider the facts and circumstances of the offense of which the accused was found guilty, as well as "the matters in extenuation and mitigation properly before the court."

The defense's failure to object may not constitute a waiver. However, such passivity provides at least an indication the trial counsel's argument was not considered prejudicially harmful. *United States v. Ryan*, 21 U.S.C.M.A. 9, 44 C.M.R. 63 (1971); *United States v. Wood* and *United States v. Davis*, both supra. In evaluating trial counsel's entire argument, the defense inaction seems understandable. The international drug relations comment was but one out of a number of earnest, forceful and otherwise proper matters argued by the government counsel.

In the circumstances, we see little likelihood that the court members were appreciably influenced by the comparatively brief, albeit improper, allusion to the sentencing effect on international political relations. See *United States v. Gerlach* and *United States v. Davis*, both supra. To eliminate all rational possibility of prejudice, however, we will reassess the sentence on the basis of the entire record. See *United States v. Gerlach* and *United States v. Wood*, supra.

4. Paragraph 5–8e, AFR 125–18(C4), Operation of Air Force Correction and Detention Facilities, 7 February 1977. The superseded provi-

IV.

In their final complaint of error, appellate defense counsel charge that the eligibility criterion for entry into the Air Force Rehabilitation Program violates the accused's constitutional rights.

In support of this assertion, counsel cite AFR 125–18(C3), 16 July 1976, the regulation governing the operation of the Air Force Rehabilitation Program. Among other things, this regulation imposes a threshold entry requirement of 30 days remaining to be served in confinement following convening authority action and arrival at the Rehabilitation Center.[4] Counsel point out that by the time the convening authority took his action, the accused had served his sentence to confinement. Thus, since the convening authority did not choose to commute the punitive discharge to a period of confinement, the accused did not technically qualify for entry into the Air Force Rehabilitation Division at Lowry Air Force Base, Colorado.

█ In our judgment, the procedural requirements for entry into the Air Force Rehabilitation Division poses no justiciable issue for resolution by this Court. *United States v. Cagle*, 47 C.M.R. 542 (A.F.C.M.R. 1973), pet. denied, 48 C.M.R. 999 (1974). Having carefully scrutinized the record, with particular attention to the alleged delay in the action thereof, we are satisfied that the staff judge advocate's review was in no manner defective in substance, nor the time to action by the convening authority unreasonable. See *United States v. Jefferson*, 22 U.S.C.M.A. 554, 48 C.M.R. 39 (1973); *United States v. Timmons*, 22 U.S.C.M.A. 226, 46 C.M.R. 226 (1973); *United States v. Gray*, 22 U.S.C.M.A. 443, 47 C.M.R. 484 (1973); *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974). We are likewise satisfied that the review sufficiently complies with the post-trial clemency procedures incorporated as a part of the initial appellate process under the provisions of AFM 111–1. As this Court said in *United States v. Cagle*, supra:

sion of the regulation which was in effect at the time the post-trial review was drafted, contained the same requirement.

Those are the only legitimate considerations which confront us here in the exercise of our powers under Article 66 of the Code. Clearly, our statutory appellate authority does not license us, nor are we equipped, to engage in the gargantuan enterprise of policing the administrative edifice of each Air Force agency or program to which an accused may be exposed during the course of his trial and sentence. See *United States v. Bell*, No. S23293, 46 C.M.R. 726 (A.F.C.M.R. 1972).

In summary, our jurisdiction is limited by Article 66 of the Code. We simply lack the authority to right all wrongs. Certain matters, right or wrong, and rightly or wrongly, are not for our consideration. *United States v. Cagle*, supra. The present complaint falls precisely within this category.

We have carefully considered appellate defense counsel's remaining assertion of error and find it to be without merit. Having reassessed the sentence in light of the sentencing argument of trial counsel, we find appropriate only so much as provides for a bad conduct discharge, confinement at hard labor for two months, forfeiture of $150.00 per month for two months, and reduction to the grade of airman first class (E–3). The findings of guilty, and the sentence as modified herein, are

AFFIRMED.

BUEHLER, Senior Judge, and HERMAN, Judge, concur.